| | | |
|---|---|---|
| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S SUPPLEMENTAL MOTION FOR REHEARING TO REQUEST AN EXPEDITED JUDGMENT AND WRIT RELIEF ON THE PLEADINGS TO ENFORCE THE TEXAS CITIZEN'S PARTICIPATION ACT

### TO THE HONORABLE FOURTH COURT OF APPEALS:

Pursuant to Sections 27.003 and 51.014(a)(12) of the Texas Citizen's Participation Act (TCPA) and Rule 91 of the Texas Rules of Civil Procedure (TRCP), Appellant files this *"Supplemental Motion For Rehearing To Request An Expedited Judgment And Writ Relief On The Pleadings To Enforce The Texas Citizen's Participation Act,"* to supplement his motion for rehearing filed on February 12, 2015 as follows: (a) to request judicial notice of briefing amendments filed on January 30, 2015 and February 19, 2015; (b) to move for special exceptions from the Appellees' cause of action to reflect fraud on the trial court on July 9, 2014 and July 17, 2014, and again in this Court on January 30, 2014; and (c) to move the Court for a judgment and writ relief on the pleadings as of February 19, 2015. In support, Appellant requests notice of the supplemental record filed by the Clerk on February 19, 2015, and waiver of any and all procedural restrictions inconsistent with Open Courts Doctrine. *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306–07 (Tex.App.—Dallas 1992, no writ) (reversing turnover order).

### STATEMENT OF THE FRAUD ON THE COURT ISSUE

Familiarity with Appellant's First, Second, Third and Fourth Issues For Interlocutory Review, and twelve points of error in the briefings of record, is assumed, particularly those noted

1

in the fraud on the court advisory amendments filed on February 19, 2014. In summary, Appellant requested dismissal as the owner of a purchase money lien interest relating back to a purchase transaction by Moroco Ventures, LLC in October of 2003, that the purchase money transaction is separate and collateral to subsequent second lien transactions and first lien assignment executed by attorneys with the Law Office of McKnight and Bravenec, and that his paramount interest arising from the purchase money transaction was neither forfeited nor extinguished by the post-petition foreclosure sale on October 3, 2006 during Bankruptcy Case No. 06-15829. Appellant incorporates chain of title evidence in the Supplemental Record for the property known as 1216 West Ave. San Antonio Texas, filed on or about February 19, 2015.

The major live issue is the accrual of a resulting trust on July 8, 2014 of which Appellant is a creditor beneficiary. As set forth in Appellant's February 19th Amendment, the testimony offered in opposition to dismissal on July 9, 2014 and July 17, 2014, by Attorneys Bravenec and Deadman, concealed a conveyance of title to the subject property to Torralba Properties, LLC the preceding day, July 8, 2014, and fabricated evidence to satisfy the injury element of Appellees' claim for temporary injunctive relief. Appellant contends that fact situation documented in the current state of the record negates all the essential elements of the Appellees' cause of action.

A diligent search for authority reveals no other case in the history of Anti-SLAPP litigation in the United States with record evidence of fraud on the court and multiple violations of automatic stay laws all in the same case. *Cf., Varian Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) appealed in Super. Ct. No. CV780187 (Cal. 2005) (lack of trial court jurisdiction due to appeal in Anti-SLAPP case triggering automatic stay); *Jones v. Beckman*, 2007 Cal. App. LEXIS 8326 (Cal. App., 2007) (invalidating movant's unauthorized cross appeal in Anti-SLAPP lis pendens case). The misrepresentations here were material because the

resulting trust accruing with the transfer to Torralba negates an essential element of the plaintiff's case for tortious interference invoking the trial court's plenary jurisdictional, and thus impaired the trial court's capacity to administer justice on July 17, 2014.

On December 8, 2014 the Court declined to entertain Appellant's request for immunities from the trial court's order denying Appellant's plea to jurisdiction on the grounds that the Tex. Civ. Prac. & Rem. Code limits such interlocutory appeals to governmental litigants, and on February 2, 2015 stated that "in disposing of this appeal, this court will consider only those issues raised in appellant's brief that relate to the orders this court has expressly identified as the subject of this appeal." Nonetheless, in view of the issues of first impression, Appellant respectfully declines, in the absence of more detailed guidance, to read the Court's orders to mean that TCPA Section 27.011(a) withholds jurisdiction to enforce immunities from fraud on the court and automatic stay violation transpiring during a perfected interlocutory appeal. In the interest of judicial efficiency, therefore, Appellant respectfully requests the Court to give effect to the text of TCPA Section 27.011(a) by granting special exceptions to immunitize his appeal from Bravenec and Deadman's misconduct, by reversing the trial court, and by granting temporary injunctive relief to maintain the status quo pending the conclusion of the interlocutory appeal. As shown by evidence and arguments presented below, it simply cannot be said here that the Appellees are engaged in a good faith argument for extension of existing law on Section 27.011(a) which might excuse their apparent misconduct or otherwise justify leave to amend.

**LEGAL AUTHORITY FOR REVIEW OF
A FRAUD ON THE COURT ISSUE
IN AN ANTI-SLAPP INTERLOCUTORY APPEAL**

The question of law of first impression for de novo review is whether the TCPA grants authority to adjudicate fact issue about a resulting trust that accrues in connection with a non-

movant's fraud on the court or bad faith conduct incidental to the denial of an interlocutory TCPA motion to dismiss. As a general rule, the protection provided by remedies for "Strategic Lawsuits Against Public Participation" ("SLAPP") is a substantive immunity from suit, *Batzel v. Smith*, 333 F.3d 1018,1025 (9th Cir. 2003), *cert. denied* 541 U.S. 1085 (2004), the purpose of which in the specific context of the TCPA, is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time protect the rights of a person to file meritorious lawsuits for demonstrable injury. Tex. Civ.Prac. & Rem.Code Ann. § 27.002 (West Supp.2014).

Arguably, a fraud on the court and any issue incidental to it lie well within the scope of the TCPA because the Act is designed to provide defendants in non-meritorious lawsuits the ability to have these suits dismissed early on. House Research Org., Bill Analysis, Tex. H.B. 2973, 82nd Leg, R.S. (2011); Senate Research Ctr., Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011). If a legal action is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex.Civ.Prac. & Rem.Code Ann. § 27.003(a) and (b)(West Supp.2014). If the motion is denied, the moving party is authorized to commence an interlocutory appeal which has the effect of staying all trial court proceedings. Tex.Civ. Prac. & Rem.Code Ann. 51.014.

Regarding appeals, Section 27.008 provides that "[a]n appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 ..." *Id.* The texts of Section 27.008 and 27.011 means that the courts of appeals have authority to adjudicate a fraud on the court issue in an interlocutory

appeal, as shown more specifically by the provisions in subsection (a) that "[t]his chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions," and in subsection (b) that "[t]his chapter shall be construed liberally to effectuate its purpose and intent fully." *Id.* In this regard, TRCP 91 provides explicit procedural support for allowing special exceptions in an interlocutory appeal to the Court to fully ascertain its Anti-SLAPP jurisdiction.

Historically, the common law immunities from fraud on the court redressible through a motion for special exceptions are available to a proponent who shows "an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' " *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.1978). Only the most egregious misconduct such as fabrication of evidence by attorneys will constitute a fraud on the court. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, (1944); 7 J. Moore, FEDERAL PRACTICE, p 60.33 at 510-11. As the Supreme Court in *Hazel-Atlas* prior to the 1946 revision of Rule 60:

> Federal courts . . . long ago established the general rule that they would not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. This salutary general rule springs from the belief that in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered. . . . From the beginning there has existed along side the term rule a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against the judgments regardless of the term of their entry.

Id, at p. 244. (citations omitted). The specific elements of fraud on the court have been held to consist of conduct: (1) on the part of an officer of the court; (2) that is directed to the "judicial machinery" itself; (3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; (4) that is a positive averment or is concealment when one is under a duty to disclose; and (5) that deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

Appellant's diligent search for doctrinal guidance on the processing of fraud on the court issues in the specific context of the Anti-SLAPP laws points to only one other case in the entire nation where such an issue has been judicially noticed, the California Supreme Court decision in *Wilson v. Parker, Covert & Chidester*, 123 CR2d 19 (Sept. 2002) (case attahced). *Wilson* involved a malicious prosecution controversy following reversal of a trial court's order denying the defendants' Anti-SLAPP motion. The issue was whether the trial court's ruling established that the plaintiffs originally had probable cause to bring their original suit, and if so whether the probable cause factor barred the defendants' malicious prosecution claim. The California Supreme Court reasoned that the trial court's denial of the Anti-SLAPP motion implied that the original claim had at least some merit, and that absent proof that the trial court ruling was obtained by fraud, a claim for malicious prosecution would not lie though the ruling was later reversed on appeal.

As shown in *HomeyTel v. Moser*, 2004 WL 829006 (Cal. App, 2004), the remedies provided by California's law of malicious prosecution serve a structural purpose that is directly analogous to the purpose of Anti-SLAPP laws in general:

> Malicious prosecution is actionable because it harms the individual against whom the claim is made, and because it threatens the efficient administration of justice. Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset... Furthermore, holding an attorney liable for damages that result from prosecuting a civil claim after he or she learns that the claim has no merit encourages voluntary dismissals of meritless claims at the earliest stage possible, assists the efficient administration of justice, and reduces harm to individuals targeted by meritless claims. Moreover, by advising a client to dismiss a meritless case, the attorney will help ... limit the client's exposure to liability for malicious prosecution.

Id. at p. 7, *citing Bertero v. National General Corp.* (1974) 13 C.3d 43, 118 C.R. 184, 529 P.2d 608, 5 Summary (9th), Torts, §435.). Since the structural objectives of malicious prosecution law are virtually synonymous with those that TCPA Section 27.003 serves by designating certain

events in litigation for interlocutory review, it follows from a liberal construction of the Act that the known legislative intent cannot be fully accomplished fraud on the court is excluded from the grant of statutory authority to entertain interlocutory appeals.

The TCPA's procedures for expedited appeals encapsulate the ethos of Texas law for jus cogens standards of judicial conduct, toward plaintiffs and defendants alike, where enumerated freedoms are at stake pertaining to the exercise the right to free speech, to petition, and to participate in government to the maximum extent permitted by law. Particularly noteworthy among these standards is the rule that judgment and orders are void ab initio, not merely voidable, when rendered by a coram non judice tribunal, such as a trial court that attempts to exercise jurisdiction after the activation of an automatic stay. *Larry York v. State*, 373 S.W. 3d 32 (2012). The state law rules against void judgments is binding on the intermediate state courts, and supercedes federal court choice of law except when decisions of the U.S. Supreme Court are in play. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam).

Compelling prudential support for the prompt adjudication of fraud on the court issues in an Anti-SLAPP interlocutory appeal is found in *Amalfitano v Rosenberg*, 428 F. Supp. 2d 196 (S.D.N.Y., 2006), appealed in 533 F.3d 117, 125 (2d Cir., 2008), *certified to state court in* 12 NY3d 8 (N.Y. App., 2009). There, a summary judgment secured by fraud in a prior case compelled the federal courts to certify to the state court a question about whether reliance was a mandatory element of attorney deceit under New York's anti-deceit statute codifying the ancient common law remedies under the Statute of Westminster. *Amalfitano* provides a strong justification for distinguishing special exceptions eligible for discretionary review under Section 27.011(b), from private party pleas to jurisdiction that are categorically barred from review under Section 51.014(a). It goes without saying that constitutional and prudential standing and plenary

7

jurisdiction are indisputably essential elements of any justiciable cause of action. Thus, a treatment of the Act that gives precedence to the general purposes of Section 51.014(a) over the special rules of construction mandated in TCPA Section 27.011(a) defeats the Act's purpose.

The procedures in TRCP 91 for special exceptions are the customary vehicle for challenging fatal deficiencies in an adverse parties' pleadings, and may be used to assert that the adverse party has not pleaded a valid cause of action at all, *Mowbray v. Avery*, 76 S.W.3d 663, 677 (Tex. App.—Corpus Christi 2002, pet. denied), in which case the otherwise available right to amend is forfeited. *Ford v. Performance Aircraft Servs., Inc.,* 178 S.W.3d 330, 335 (Tex. App.—Fort Worth 2005, pet. denied). The grant or denial of special exceptions is reviewed for abuse of discretion. *Muecke v. Hallstead,* 25 S.W.3d 221, 224 (Tex. App.—San Antonio 2000, no pet.)). A special exception is generally adequate if it points out with specificity how the plaintiff's allegations are faulty, so as to differentiate the exception from a general demurrer. The allegation that a party has failed to plead a cognizable tort supports a special exception. See TEX. R. CIV. P. 90; see also Castano v. San Felipe Ag. Mfg. & Irrigation Co., 147 S.W.3d 444, 453 (Tex. App.—San Antonio 2004, no pet.).

The TCPA's sanctions provisions also support the conclusion that a fraud on the court issue is justiciable on interlocutory appeal. Once a determination is made in a dismissal proceeding about the identity of the culpable party, "[t]he TCPA treatment of [sanctions] is equivalent to that permitted for vexatious litigation tactics in Fed. R. Civ. P. 11 and 37, as well as 28 U.S.C. § 1927." *Williams v. Cordillera Communications, Inc.,* Case No. 2:13-CV-124 (S.D. Tex., November 24, 2014), at p. 2; cf., *Goad v Zuehl Airport Flying Community Owners Association, Inc.,* Case No. 04-11-00293-CV (Tex. App. – San Antonio, May 23, 2012) (rejecting vexatious litigant treatment). Fraud on the court is a well-known vexatious tactic that

is covered by Rule 11, Section 1927 and state law public policy principles: "For the law to countenance ... abrupt and shameless shift[s] of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth ... " *Zuniga, Id.* at p. 318 cited in *Britton v. Seale,* 81 F.3d 602 (5th Cir.1996).

## ARGUMENT AND AUTHORITIES

**A.     TRCP 91 Supports Five Special Exceptions To Appellees' Cause Of Action Due To Bravenec/Deadman's Fraud On The Court And Bad Faith Conduct.**

Pursuant to TRCP 91, Appellant moves the Court to grant special exceptions for fraud on the court in Case No. 2014-CI-07644 leading to formation of a resulting trust of the subject property on July 8, 2014 of which Appellant is the paramount beneficiary. TEX. R. CIV. P. 91.[1] "Only wiping the slate clean will restore the [Appellant] to the position he would have occupied had due process been accorded to him in the first place." *Security State Bank & Trust v. Bexar County, et al,* Case No. 04-11-00928-CV (Tex. App. – San Antonio 2012), at p. 10;  see also, *Archer v. Blakemore,* 367 S.W.2d 402, (Tex. App. Austin -1963) (quiet title case involving client request to cancel deed used for in-kind payment), and *Barranza Family Limited Partnership v. Levitas,* Case No. 13-07-00470-CV (Tex.App. 13th Dist. - Corpus Christi, 2009) (right of interested party principle to an accounting).

### 1.     Fraud On The Court

Appellant asserts for his first Rule 91 special exception that the Bravenec and Deadman engaged in an actionable fraud on the court on after July 9, 2014 and July 17, 2014. In an ordinary case, the recording of a notice of a lis pendens simply means that the interest of the

---

[1]     If the Court determines that the procedure in Rule 91 does not furnish an adequate remedy at law, then Appellant respectfully requests to reopen the original proceeding in Case No. 04-14-00841-CV, to revive grievances from the closed proceeding in Case No. 04-14-00670-CV, and to incorporate the two in a reopened original proceeding for extraordinary relief. *Zuniga, Id.*

9

grantor passes to the grantee subject to a determination by the court, *Cherokee Water, Co. v Advance Oil & Gas, Co.*, 843 S.W. 2d 132, 135 (Tex. App. – Texarkana 1992, writ den'd), and when reviewing issues about special exceptions, the courts of appeals accept as true all the material factual allegations and statements reasonably inferred from the allegations set forth in the pleadings. Here, Bravenec concealed a transfer to Torralba which he was under a direct or indirect duty to disclose. Appellees' standing to request a permanent injunction is vitiated in its entirety by their fraud on the court or bad faith conduct arising from the evidentiary contradiction between Bravenec's sworn deed record showing that he conveyed the property on July 8, 2014, and Deadman's concealment of the conveyance from the trial court in his dual role as witness and attorney on July 17, 2014. In short, Bravenenc and Deadman committed fraud on the court by ignoring the governing rules of law on lis pendens speech, and by giving testimony to fabricate the appearance of an injury that is nonexistent according to *Cherokee Water, Id.*

2.  **Estoppel By Deed Barring Appellee From Denying A Resulting Trust.**

Appellant asserts for his second special exception that Appellees are estopped form denying the validity of deed records establishing the accrual of a resulting trust in connection with the unnoticed transfer to Torralba. A sale affected by fraud or mistake of property under the supervision of a reviewing court is subject to being construed as a resulting trust and set aside by the reviewing court. *Security, Id.* In *Security*, the Court voided a tax sale that was executed by mistake without notice to a record lienholder, and remanded the case for further proceedings on the lienholder's quiet title claim. Id. at p. 10. Here, Appellees' transfer to Torralba was incidental to a fraud on the court in violation of due process. The resulting trust that arose from these acts negates the Appellees' standing as the real parties in interest of their cause of action. *Id.*

3.  **Bad Faith Conduct Arising From The Dual Role Of Appellees' Attorney As Attorney And Witness.**

10

Appellant asserts for his third special exception that Deadman acted in a dual role as an attorney and witness in giving testimony, in response to a direct question from the presiding judge posed in open court in the 28rth Judicial District Court, which falsely identified One For Autism as the prospective purchaser. Deadman made a positive averment on July 9, 2014 by stating his personal belief that One for Autism was the prospective purchaser when the Court inquired about the purchaser's identity. Deadman's statement showed reckless disregard for the truth and a failure to conduct reasonable pre-filing inquiries in connection with the First Amended Petition filed on July 8, 2014 in that Torralba was the record owner as of that date. Therefore, Rule 91 is applicable to challenge Deadman's dual role in the alleged scheme.

### 4. Lack Of Federal Question Jurisdiction And Equitable Tolling Under 28 U.S.C. 1367.

Appellant asserts for his fourth special exception that Appellees' res judicata and statute of limitations arguments are invalid, as is their premise that the Fifth Circuit exercised federal question jurisdiction in any final judgment or order to give res judicata effect to the judgment in *Martin v. Grehn* in Case No. 13-50070 as an adverse ruling on the purchase money transaction alleged in Appellant lis penden notice of record on July 8, 2014. *Chisholm, Id.* Contrary to Appellees contentions, it misses the point to allege that Appellant is not the holder of a valid right of redemption because the allegation is that Appellant is the owner of a third party purchase money lien, and that federal law in 28 U.S.C. 1367 mandates equitable tolling of unadjudicated state law claims surviving a closed federal case. Id. Under the circumstances, 28 U.S.C. 1367 dictates by operation of law that the state courts have jurisdiction over unadjudicated legal malpractice claims, estoppel by deed, and purchase money issues in Case No. 04-14-00483-CV. *Chisholm, Id.*

11

## 5.     Impermissible Prior Restraints On Speech And Contractual Obligations.

Appellant asserts for his fifth special exception that the cause of action to suppress past and future speech as documented in the gag order of July 17, 2014 is inherently non-meritorious and absurd. The Appellees' cause of action styled as Case No. 2014-CI-07644 clearly qualifies as a judicial proceeding within the meaning of Section 27.005 and the lis pendens notice of record as of July 8, 2014 was a communication within the meaning of subsection (c) eligible for the protection as specified in Section 27.011(a).The gag order on July 17, 2014 was overlybroad because the *"Perfected Notice Of Lis Pendens"* met all the statutory conditions for recordation in deed records including reference to Case No. 2014-CI-07644. *Long Beach Mortg. Co. v. Evans,* 284 S.W. 3rd 406, 416 (Tex. App. Da;;as 2009) *cert. denied* 130 S. Ct. 3470 (2014). As the Texas Supreme Court recently stated, "[g]iven the inherently contextual nature of defamatory speech, even the most narrowly crafted of injunctions risks enjoining protected speech because the same statement made at a different time and in a different context may no longer be actionable. Untrue statements may later become true; unprivileged statements may later become privileged." *Kinney v. Barnes,* No. 13-0043 (Tex. 2014), at p. 10 and 17. The instigation by Bravenec and Deadman of a gag order to restrain future speech exerted a defiling effect on the judicial process by causing departures from compliance with substantive due process principles. The unbounded scope of the gag order is non-compliant with the rule of the Court. *Markel V. World Flight, Inc.,* 938 S.W.2d 74 (Tex. App.-San Antonio 1996, no writ) (enforcing rule against prior restraints).[2]

---

[2]     Although the recorded lis pendens filing involved a substantial degree of published speech, moreover the Kinney decision is applicable and protects the lis pendens under the rule against prior restraints because an equally substantial part of the published lis penden notice by definition encompasses future communications in support of judicial proceedings that relate not only to the instant interlocutory appeal proceeding which is ongoing, but a possible resumption of trial court proceeding on a remand that has yet to occur, not to mention adjunct proceedings in Martin v. Bravenec, Case No. 14-50093 in the U.S. Court of Appeals.

**B. On The Merits, Appellees' Lawsuit Is An Unmitigated Sham Warranting An Expedited Dismissal For Grossly Insufficient Evidence.**

**1. The Existing State Law Anti-SLAPP Scheme Covers Lis Pendens Speech.**

With or without special exceptions, Appellees' cause of action disintegrates once untethered from the illusory fact issues proffered in their motion of January 30, 2015, most notably that no cause of action or claim covered by Chapter 27 was plead. *See Appellees' Motion of January 30, 2015 at paras. 13 and 16.* Careful examination reveals that their legal action is an artfully crafted slander of title suit that responds on its face to the exercise of the right of free speech and to petition, *James, et al, v. Calkins,* Case No. 01-13-0018-CV (Tex. App. – Houston [1st Dist.] August 21, 2014), is unsupported sufficient evidence to meet the TCPA's clear and specific evidence standard, *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living,* Ltd., 416 S.W.3d 71; (Tex. App – 1st Dist. – Houston 2013), and leads to absurd results in applying Section 27.005 (c) to lis pendens disputes in general, *La Jolla Group II, et al. v. Daniel A. Bruce, et al,* Case No. F061829 (Cal. App.) (see case appendix). The plain meaning of the text of Section 27.005(c) covers the lis pendens activities at issue in the judicial proceedings below, and structurally implies that tort claims to suppress future speech are an improper means to challenge the evidentiary merit of a property interest being communicated by a lis pendens claimant. *Id.* In short, their cause of action is a sham to deprive protected liberty and property interests of a former client aggrieved by alleged legal malpractice on the part of the Law Office of McKnight and Bravenec. *See Verification And Declaration* in Exhibit A.

**2. The Appellees's Cause Of Action To Suppress Future Lis Pendens Speech Is Indisputably Based On The Exercise Of A Covered Right To Petition.**

The fact situation here is directly analogous to *La Jolla* where a California court of appeals ruled for the Anti-SLAPP movants on two grounds: "First, the absolute privilege ... was

applicable to the recording of the lis pendens in this case. Second, the evidence of forgery

established as a matter of law that the second deed of trust was void and, therefore, appellants

never acquired title to the Property. Each of these grounds would be a sufficient basis to

conclude that appellants have no probability of prevailing .... *Id.* Appellant contends that the

subject matter of the Appellees' legal action, like the subject matter of the action in *La Jolla*,

clearly supports Anti-SLAPP intervention to vindicate the exercise of the right to free speech and

to petition.

In *James, Id.,* Texas plaintiffs brought tort cases against the defendant filing party of a lis

pendens notice , and the state court of appeals resolved the dispute against the non-moving party.

*Id.* As such, *James* supplies a Texas law precedent for construing a lis pendens notice as

constitutionally protected speech within the meaning of the TCPA:

> We agree that appellees' claims in the underlying case are "based on, relate[] to, or [are] in response to" appellants' exercise of the right to petition as defined by the TCPA. See id. §§ 27.001(4)(A)(i), 27.005(b). As pleaded, appellees' actual and constructive fraud and barratry claims are "based on, relate[] to, or [are] in response to" [the opposing parties'] allegedly fraudulently claiming that they represent [the beneficiary of guardianship] in pleadings filed in various lawsuits. See id. § 27.005(b). Likewise, appellees' fraudulent lien claim is "based on, relates to, or is in response to" the lis pendens filed by [Appellant] with the Harris County clerk that gave notice of her claims against [Appellee] in the 61st District Court lawsuit, which seeks to cancel his transfer of [the beneficiary's] home to a trust controlled by him. All of these are "communication[s] in or pertaining to a judicial proceeding." See id. § 27.001(4)(A)(i). Appellees argue that that these actions cannot be constitutionally protected, but the cases they cite do not apply the TCPA, or do not involve communications of the type at issue here. Accordingly, we hold that appellants met their initial burden to prove that appellees' legal action related to their exercise of the right of petition. See id. § 27.005(c).

The *James* court ultimately agreed with the moving parties and upheld the lis pendens notice

because a dispute about an interest in real property was ascertainable from the face of the notice.

As such, the result in *James* supports Appellant's briefings and evidence advocating that

Appellees tort theory is covered by the Anti-SLAPP laws of Texas. Id.

The treatment of lis pendens notices as a protected form of communication in *James* is consistent with treatments in three similarly situated non-SLAPP cases on point. In *Rose v. Rothrock*, Case No. 08-3884 (E.D. Penn, 2009) (See cases in Appellant's Supplemental Appendix), a federal court denied a motion to impose sanctions against a Section 1981 lis pendens claimant who had asserted an unadjudicated interest in an executory contract of sale that the defendants had allegedly breached. In *La Chappelle v. Superior Court of Riverside County*, Case No. E058014 (Cal. App. 4th Dist. 2013) (see case appendix), a state appellate court concluded that an inconclusive foreclosure dispute does not necessarily preclude the losing party from future lis pendens filings. The *La Jolla* court held that the evidentiary merit of the noticing party's unadjudicated "void ab initio deed" issue not a proper basis for cancelling lis pendens privileges. In *Wallace v. Kelley*, 2007 U.S. Dist. LEXIS 56472 (D. Neb. Aug. 1, 2007) (See cases in Appellant's Supplemental Appendix), a federal court noted that 28 U.S.C. 1367 equitably tolled any unadjudicated state law claims, even though the same court sanctioned the pro se litigants there for filing notices of lis pendens after final dismissals of their federal case against a mortgage backed securities trust defendant, and after state court proceedings to approve the sale of the subject properties had concluded. Id. Thus, treatment in *James* is clearly consistent with the national trend in Anti-SLAPP and Non-SLAPP cases.

3.      **Appellees' Evidentiary Showing Does Not Meet Their Burden Of Proof On The Merits Under The TCPA's Clear And Specific Evidence Standard.**

Whereas the non-movants in *La Jolla* denied that the second deed of trust was a forgery to satisfy their burden of proof, Appellees attempt in futility here to establish interference by relying on Bravenec's testimony at the July 9, 2014 hearing, and past rulings in their favor in the 2010 case, *Martin v. Grehn*, Case No. SA 11-CV-0414. Appellees' reliance on Bravenec's testimony alone is fatal to their burden under the TCPA clear and specific evidence standard. The

15

*Newspaper Holdings* court disposed of the tortious interference claim there with the holding that "[t]o establish a cause of action for tortious interference, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract, (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss …Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." *Id.*

The evidence here supports the same conclusion as in *Crazy Hotel* and *La Jolla*. Bravenec offered testimony under oath suggesting that Appellant was interfering with a prospective sale to One To Autism when he knew or should have known a deed in his name was filed to convey the property to Torralba the day before. As such, Appellees evidentiary showing not only serves to establish the opposite of the point for which it is cited, but is subject to exclusion for public policy reasons according to the Court's decision in *Zuniga v. Grose, Locke, & Hebdon*, 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ ref'd). Their argument fails under *La Jolla* for the additional reason that they offer no evidence "as to particular [purchase money] transactions" to show that the title they acquired had the effect of extinguishing purchase money interests, and legal authority whatsoever to justify exceptions from the separate transaction rule of res judicata doctrine. *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010) (applying separate transaction rule to affirm denial of sanctions).

Appellees' evidentiary showing relying Bravenec and Deadman's textually unsupported anecdotal characterizations of orders rendered by the Hon. Senior U.S. District Court Judge Harry Lee Hudspeth are also subject to special exceptions and insufficient on the merits for several reasons. The *La Jolla* court rejected an analogous version of the Appellees argument that

Appellant has no interest in the property by disapproving the non-movants argument to that effect there: "A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing. A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations. Although the law protects innocent purchasers and encumbrancers ... that protection extends only to those who obtained good legal title ... [A] forged document is void ab initio and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor... Since the second deed of trust was a forgery and was void, appellants received no title by it." *La Jolla, Id.* at p. 18-19. Here, Appellees have no evidence to negate Appellant's purchase money claims. Judge Hudspeth's final order in the 2010 federal civil case facially concurs with the order of remand that U.S. Bankruptcy Judge Leif M. Clark earlier rendered on September 24, 2012, concluding that the state courts furnish an appropriate forum for Appellant's dispute with McKnight and Bravenec. Compared to *La Jolla's* non-movants, Appellees "purported evidence ... was vague, equivocal (as to particular transaction) and hearsay" analogous to the insufficient evidentiary showing presented by the purported creditors in *Unifund CCR Partners v. Villa, 273 S.W. 3d 385 (Tex. App. - San Antonio, 2008).*

4. **Multiple Defenses And Affirmative Defenses Establish That The Appellees' Hypothetical Tortious Interference Case Leads To Absurd Results.**

In the unlikely event that the Court discerns clear and specific evidence to support each element of Appellees' prima facie case, the Court's inquiry does not end because the TCPA calls for consideration of the movant's defenses. Appellant asserts as his primary defense to the tortious interference claim that his lis pendens speech in general, and the filing of a lis pendens notice in Case No., 2014-CI-0744 in particular, did not impair the contracting parties in exercising the rights they claimed to have, and that the conveyance to Torralba is conclusive

17

evidence of that fact. *Newspaper Holdings, Id.* Therefore, Appellant requests judicial notice of his affirmative defenses under the doctrine of estoppel by deed, and his undisputed status as a holder of encumbrances that run with the land. *Urban Renewal Agency of San Antonio v. Bridges Signs, Inc.,* 717 S.W.2d 701 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.); *Cooke et al, v. Avery,* 147 US 375, 13 S.Ct. 340, 37 L. Ed. 209 (1893).

Appellant's estoppel by deed defense is equivalent in force and effect to the void order defenses approved in *La Jolla* and *La Chappelle. La Jolla* involved a special exception fact situation of sorts where a California court of appeals upheld a grant of an Anti-SLAPP motion for lis pendens claimants of a property foreclosed with a forged deed. The foreclosure sale purchasers, La Jolla Group II and its partners, responded by suing the movants and their attorney for slander of title. In the trial court, the purchasers contended that the recording of the lis pendens was not privileged, and wrongfully prevented them from selling the property. According to the non-movants, the facial authenticity of the second deed was enough to establish that the lis pendens notice was unprivileged.

The movant owners responded by filing an anti-SLAPP motion, alleging that (1) the recording of the lis pendens was a protected activity, and (2) the appellants could prevail on the merits of their slander of title claim, and the trial court agreed. In affirming the trial court's decision, the appellate court applied the standard of review that "the motion to strike should be granted if the defendant defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element," and cited the evidentiary insufficiency of the non-movants' showing as the reason for granting anti-SLAPP relief. *La Jolla, Id. (citing Carver v. Bonds,* 135 Cal.App.4th 328, 344 (2005)).

18

*La Chappelle* involved a similar fact situation where purchasers at a nonjudicial foreclosure sale moved to expunge a lis pendens by alleging that the claimant could not establish the evidentiary merit of his claim. In its ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." *Id* at p. 2. On appeal, the *La Chappelle* court of appeals concluded that the foreclosure judgment was inconclusive about whether or not the underlying deed was void: the lis pendens claimant "stated grounds to set aside the sale based on the invalidity of the trust deed" and "he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens." Id. at p. 4.

On balance, Appellees' course of action in transferring the property and then still claiming interference, leads to absurd results. These ill-advised claims, such as their repeated attempts to equate a right of redemption controversy with a purchase money transaction, are doomed to fail because the doctrine of estoppel by deed enjoins them from denying restrictive covenant evidence that demonstrates Appellant's status as a creditor beneficiary and purchase money lien owner. *Urban Renewal, Id.* Further, the 2006 order of the 57th Judicial District Court lacks res judicata effect because the decretal clause states merely that a foreclosure event occurred on October 3, 2006, and because limitations bars for the relevant unadjudicated state claims were equitably tolled after the 2010 federal case by 28 U.S.C. 1367. *Id.* [3]

---

[3] See especially, Restatement (First) of Contracts § 136 (1932) ("[A] promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise."). For case law on restrictive covenants running with the land, *see Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Center Prop. Owners Ass'n, Inc.,* 167 S.W.3d 341 (Tex. App.—San Antonio 2005, no pet.); *Munson v. Milton,* 948 S.W.2d 813 (Tex. App.—San Antonio 1997, writ denied); Pebble Beach Prop.

19

## CONCLUSION AND PRAYER

The matter of whether Appellees' conduct on July 8, 2014, July 9, 2014 and July 17, 2014 caused a forfeiture of their cause of action, and led to a resulting trust of which Appellant is the paramount creditor beneficiary, is directly related to both orders that the Court has designated as the subject of this appeal. *Archer, Id.* "On balance ... the costs to the legal system [of the orders sustaining Appellees' cause of action for tortious interference with contractual relations]... outweigh its benefits..." *Zuniga, Id.* at p. 318. Attorneys Bravenec and Deadman deprived protected federal rights under color state law. But for resulting deprivations of due process through fraud on the court and bad faith conduct by Mssrs. Bravenec and Deadman, Appellant would have occupied the position of creditor beneficiary by operation of estoppel by deed. Applying *Zuniga*, the Court has good cause to wipe the slate clean by declaring that Mssrs. Bravenec and Deadman engaged in a fraud on the court and bad faith conduct in general, and that a resulting trust that arose in connection with their fraud on the court. An adequate remedy at law is not available. Appellees have previously withheld compensation for the value of Appellant's interests in restrictive covenants, equitable servitudes, escrow accounts and title insurance policy benefits. They also multiplied their state litigation with an unauthorized post-stay counter-appeal for affirmative relief in U.S. Court of Appeals Case No. 14-50093. *See, Supplemental Appendix filed on January 30, 2015.* Temporary injunctive relief is due because Appellant's brief demonstrates a probability of success on the merits of the case for TCPA relief, and that denial of injunctive relief would, more likely than not, cause irreparable injury due to piecemeal litigation that cannot be remedied with monetary damages. *Cf., Amalfitano, Id.* [4]

---

Owners' Ass'n v. Sherer, 2 S.W.3d 283 (Tex. App.—San Antonio 1999, pet. denied); and *Giles v. Cardenas*, 697 S.W.2d 422 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

[4] Extraordinary relief is well justified to counteract increases and distortions in litigation such as these that have exerted a highly undesirable long term effect on the integrity of the judicial process since

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: February 25, 2015

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## CERTIFICATE OF SERVICE

I mailed a copy of this "Supplemental Motion For Rehearing To Request An Expedited Judgment And Writ Relief On The Pleadings To Enforce The Texas Citizen's Participation Act," to Glenn Deadman and Torralba Properties, LLC on February 25, 2015.

Rowland J. Martin

---

that time. *State Farm Fire & Casualty Co., v. Gandy*, 925 S.W. 2d 696, 707-11 (Tex. 1996). The only conclusion one can plausibly reach is that Bravenec and Deadman's conduct represents an egregious end-around on Anti-SLAPP laws and Disciplinary Rules Of Professional Responsibility in general. Temporary injunctive relief is also justified. On information and belief, a clear and present risk exists that Bravenec is using the extension of time granted on February 2, 2015 in an attempt to conceal assets or assist in their concealment, to gain time to hinder satisfaction of Appellant's third party purchase money lien interest, and to delay accountability for his putative legal malpractice liability. *Keck, Mahin and Cate v. National Union Fire Insurance Company*, 20 S.W. 3d 692) (Tex. 2000); *In re Liberty Trust Co.*, 130 B.R. 467 (W.D. Tex. 1991) (pro-client rule on attorney withdrawal when unsupported by formal order of discharge).

| | | |
|---|---|---|
| **ROWLAND J. MARTIN** | ) | **TEXAS COURT OF APPEALS** |
| Appellant | ) | |
| | ) | |
| v. | ) | **FOR THE FOURTH DISTRICT** |
| | ) | |
| **EDWARD BRAVENEC AND 1216** | ) | |
| **WEST AVE. INC.** | ) | |
| Appellees | ) | **BEXAR COUNTY, TEXAS** |

## APPENDIX FOR MOTION

A.      Verification and Declaration of Appellant Rowland J. Martin

B.      *Wilson v. Parker, Covert & Chidester*, 123 CR2d 19 (Sept. 2002)

C.      *La Jolla Group II, et al. v. Daniel A. Bruce, et al*, Case No. F061829 (Cal. App.)

D.      *La Chappelle v. Superior Court of Riverside County*, Case No. E058014 (Cal. App. 4th Dist. 2013)

E.      Draft Order Granting Partial Relief On Appellant's Motion In Case No. 04-14-00483-CV

F      Proposed Interrogatories To Attorney Glenn Deadman Regarding Allegations In Support Of Rule 91 Special Exceptions.

# A

| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## VERIFICATION AND DECLARATION OF ROWLAND J. MARTIN

I, Rowland J. Martin affirm under penalty of perjury that the statements in foregoing motion for judgment on the pleadings and writ relief are true and correct to the best of information, knowledge and belief, except as to matters stated on belief, as to those I believe them to be true:

1. This verification and declaration is to assure the Honorable Fourth Court of Appeals that I did not know at the time of the hearing on July 17, 2014 that a deed conveying real property at 1216 West Ave., in San Antonio, Texas, was recorded by Edward Bravenec in favor of Torralba Properties on July 8, 2014. Bravenec's testimony on July 8, 2014 led to believe the title was still in his name. I discovered the transfer from Glenn Deadman in a conference call on or about December 1, 2014, which I can corroborate by phone records.

2. My real property interests form the basis of the chain of title for the West Ave. property on July 8, 2014 as set forth in the Clerk's Supplemental Record filed on or about February 18, 2015. I have personal knowledge of the chain of title records and believe the statements of record regarding them are true and accurate.

3. I have thoroughly examined the transcript of Bravenec's testimony about my interest at the July 9, 2014 hearing. To the best of knowledge, he testified that the relevant pendent lite purchasers all had actual knowledge of my interests of record as of July 8, 2014. I also believe this to be true, although my direct contacts were limited to One For Autism.

4. I regard the remainder of Bravenec's testimony, to the effect that that I have no interest in the subject property, as a statement made in furtherance of his apparent fraud on the court, not as a statement of fact. If the federal courts had finally concluded that I have no interest in the property, as Bravenec attempts to lead the Court to believe, there would be no basis for the ongoing appeal in *Martin v. Bravenec*, Case No. 14-50093 that has been under review since last year. I have personal knowledge of orders issued by at least four different federal district court and bankruptcy court judges, respectively, all recognizing my interests in the controversy, with three of the four indicating that the state courts are a proper forum for the dispute; namely, the Hon. U.S. District Judge David Hittner, the Hon. John C. Akard, the Hon. Lief M. Clark, and the Hon. Harry Lee Hudspeth. Judge Hittner did not reach the state court issues, but the others did. Careful examination of their opinions will establish that my activities in this Court are not the result of a

24

propensity to engage in frivolous litigation. I do admit that I made many unintended tactical errors in my attempts to prosecute a complex case, with complicated issues of first impression, as a novice pro se litigator with limited trial court experience and skills.

5. Lastly, the apparent fraud on the court committed by Edward Bravenec and Glenn Deadman in Case No. 2014-CI-07644 has once again increased and distorted litigation in which I seek redress for my grievances, and to cause them to cease and desist from defalcating the proceeds of deed settlements in which I have a paramount interest.

Date: February 24, 2015

Rowland J. Martin

# B

# Wilson v. Parker, Covert & Chidester (2002)

**Annotate this Case**

[No. S097444. Aug. 1, 2002.]

RAUL WILSON et al., Plaintiffs and Appellants, v. PARKER, COVERT & CHIDESTER et al., Defendants and Respondents.

RAUL WILSON et al., Plaintiffs and Appellants, v. MARK WILLIAMS, Defendant and Respondent.

RAUL WILSON et al., Plaintiffs and Appellants, v. CARL AXUP et al., Defendants and Respondents.

(Superior Court of Riverside County, No. 326517, Joan F. Ettinger, Temporary Judge. fn. * )

(The Court of Appeal, Fourth Dist., Div. Two, Nos. E025710, E025832, and E026853, 87 Cal.App.4th 1337.)

(Opinion by Werdegar, J., with George, C. J., Kennard, Baxter, Chin, and Moreno, JJ., concurring. Concurring opinion by Brown, J. (see p. 826).)

## COUNSEL

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Plaintiffs and Appellants.

Armen L. George, in pro. per., and for Alan D. Barbour and Miyoko O. Barbour as Amici Curiae on behalf of Plaintiffs and Appellants.

Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Mark L. Keifer, Laine E. Hedwall and Matthew E. Voss for Defendants and Respondents Parker, Covert & Chidester, Spencer E. Covert and Mark Williams.

Reich, Adell, Crost & Cvitan, Paul Crost and Carlos R. Perez for Defendants and Respondents Reich, Adell, Crost & Cvitan and Marianne Reinhold.

Stream & Stream, David D. Werner and Jamie E. Wrage for Defendants and Respondents Carl Axup and K. T. Bowers.

Rutan & Tucker and David C. Larsen for California School Boards Association Education Legal Alliance as Amicus Curiae on behalf of Defendants and Respondents

Parker, Covert & Chidester, Spencer E. Covert, Mark Williams, Carl Axup and K. T. Bowers.

Hinshaw & Culbertson, Ronald E. Mallen and Paul E. Vallone as Amici Curiae on behalf of Defendants and Respondents.

Sidley Austin Brown & Wood and Mark E. Haddad for Amoco Corporation and Amoco Technology Company as Amici Curiae on behalf of Defendants and Respondents.

Best Best & Krieger, Jack B. Clarke, Jr., John F. Walsh, Angelica Y. Castillo and Megan K. Starr for David Kuzmich, Carole Castle and Ellen Schwartz as Amici Curiae on behalf of Defendants and Respondents. **[28 Cal.4th 814]**

## OPINION

## WERDEGAR, J.-

One of the elements of an action for malicious prosecution is the absence of probable cause for bringing the prior action. (Sheldon **[28 Cal.4th 815]** Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 874.) The question presented here is whether the trial court's denial, in the prior action, of a special motion to strike under California's anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16) establishes that probable cause did exist for bringing the action, precluding maintenance of the malicious prosecution suit absent proof the ruling was obtained by fraud. We conclude that denial of the motion to strike does establish the existence of probable cause where, as in this case, the trial court's denial ruling was predicated on a finding that the action had potential merit. We therefore affirm the judgment of the Court of Appeal, which affirmed the trial court's sustaining of demurrers to this malicious prosecution action.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying action, Kuzmich v. Mexican Political Assn. (Super. Ct. Riverside County, 1998, No. 283066) (Kuzmich), arose from demonstrations and personal confrontations occurring in and around a public school. The plaintiffs were teachers and administrators at the school who alleged that the demonstrators' actions and speech amounted to harassment and defamation; the defendants were allegedly participants in, or organizers of, the protests and accompanying confrontations.

Several of the Kuzmich defendants, including the Mexican Political Association (MPA), which organized the demonstrations, and Raul Wilson, an officer of the MPA, moved to strike the action under the anti-SLAPP statute (Code Civ. Proc., § 425.16 (hereafter section 425.16)). The trial court denied the motion on three grounds: the motion was untimely; the defendants had not established that the action arose from acts "in furtherance of [their] right of petition or free speech" (§ 425.16, subds. (b)(1), (e)); and the plaintiffs had demonstrated a probability they could prevail on the merits (id., subd. (b)(3)) by establishing, in the trial court's words, "a sufficient prima facie showing of facts to sustain a favorable judgment." fn. 1

[1] Applying that policy perspective to the delineation of the probable cause element, this court held, first, that the existence or nonexistence of probable cause is a legal question to be resolved by the court in the malicious prosecution case; litigants are thus protected against the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one. (Sheldon Appel, supra, 47 Cal.3d at pp. 874-877.) We further held that probable cause is determined objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable (id. at pp. 877-882), and that the standard of probable cause to bring a civil suit was equivalent to that for determining the frivolousness of an appeal (In re Marriage of Flaherty (1982) 31 Cal.3d 637), i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." (Sheldon Appel, supra, at p. 886.) This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." (Id. at p. 885.) Attorneys and litigants, we observed, " 'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' " (Ibid., quoting In re Marriage of Flaherty, supra, at p. 650.) Only those actions that " 'any reasonable attorney would agree [are] totally and completely without merit' " may form the basis for a malicious prosecution suit. (Ibid.)

[2] Long before Sheldon Appel was decided, decisions in California and elsewhere established that a trial court judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court. fn. 2 Although this rule predates Sheldon Appel, it is motivated by much the same policy concern. Because malicious prosecution **[28 Cal.4th 818]** suits have the potential to penalize and deter the legitimate invocation of the judicial process for redress of grievances, only claims that a reasonable litigant or attorney would have seen as lacking all merit should form the basis for such a suit. Claims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness.

Thus, in Fairchild v. Adams, supra, 170 Cal.App.2d 10, the superior court jury in the underlying case, a will contest, found the will to have been made under undue influence; the Court of Appeal affirmed, but this court reversed, holding the evidence insufficient to show that undue pressure had been brought to bear on the testamentary act itself. (Id. at pp. 11-12.) In the devisee's ensuing malicious prosecution action against the objector, the appellate court held the jury's verdict in the underlying case established probable cause for the contest despite its reversal on appeal. The jurors had "considered the evidence produced at the will contest alone sufficient, not only to justify the commencement of the proceeding, but also to support the judgment that the will and codicil were results of such undue influence. They were declared by the Supreme Court to be in error--but not unreasonable--in their opinions. [¶] . . . [¶] The favorable outcome of the proceedings in the court below is conclusive evidence, in the absence of fraud, of the existence of probable cause . . . notwithstanding reversal by the Supreme Court." (Id. at p. 15, italics added.)

The Kuzmich defendants sought review of this ruling by petition to the Court of Appeal for a writ of mandate. The Court of Appeal granted the petition in part, vacating the superior court's order denying the motion to **[28 Cal.4th 816]** strike as to Wilson and the MPA. The reviewing court held that the organized protests came within the protective scope of section 425.16, though some of the personal insults and slurs alleged to have been made did not. Finding insufficient evidence of a conspiracy to harass or defame, and therefore examining each defendant's conduct individually, the Court of Appeal held that "[a]s for Wilson, there is no evidence that he personally committed tortious conduct and he is entitled to a dismissal." The MPA, the court further held, "cannot be held liable for the actions of certain of its members, and it has no liability in tort for sponsoring a protest on an issue of public significance." (Martinez v. Superior Court (Aug. 29, 1997, E020044) [nonpub. opn.].) On remand, the superior court granted the motion to strike and dismissed the action as to Wilson and the MPA.

Wilson and the MPA then brought this suit for malicious prosecution and other causes of action against the Kuzmich plaintiffs and their attorneys. The superior court sustained demurrers to the complaint by the attorney defendants and by teachers Carl Axup and K. T. Bowers, and dismissed the action as to them.

The Court of Appeal affirmed. Observing that "the denial of a SLAPP suit motion to strike parallels the denial of a motion for summary judgment," the court followed Roberts v. Sentry Life Insurance (1999) 76 Cal.App.4th 375 (Roberts), which held that denial of a defense summary judgment motion normally establishes probable cause. As did the Roberts court (id. at p. 384), the Court of Appeal reasoned that the foundation for the contrary view, enunciated in Lucchesi v. Giannini & Uniack (1984) 158 Cal.App.3d 777 (Lucchesi), had been undermined by this court's intervening decision in Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d 863 (Sheldon Appel), adopting an objective standard of probable cause for malicious prosecution actions. One justice dissented from this holding, arguing that, because survival of a section 425.16 motion to strike requires only a prima facie case, denial of such a motion does not establish probable cause. The dissenter maintained that Roberts conflicted with this court's approving citation of Lucchesi in Crowley v. Katleman (1994) 8 Cal.4th 666, 692-693, footnote 15.

We granted plaintiffs' petition for review.

## DISCUSSION

We addressed the probable cause element of malicious prosecution comprehensively in Sheldon Appel, supra, 47 Cal.3d 863. We first considered the policy reasons for adhering to limitations on the malicious prosecution tort, **[28 Cal.4th 817]** reiterating that the tort is disfavored both because of its "potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court" (id. at p. 872) and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself (id. at p. 873). A preferable approach is "the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself." (Ibid.)

Similarly, in Cowles v. Carter, supra, 115 Cal.App.3d 350, in the underlying case, a civil action for child stealing and kidnapping, the jury returned a verdict for the plaintiffs, but the trial court granted judgment for the defense notwithstanding the verdict. (Id. at pp. 353-354.) In the defendant's ensuing malicious prosecution action, the appellate court held the jury's favorable verdict for the plaintiffs in the underlying case established probable cause for the action despite its vacation by the trial court. Quoting from a Georgia decision, the court explained, " 'it would be hard law which would render a plaintiff liable in damages for instituting an action, wherein he made a truthful and honest statement of the facts, in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside. . . . [T]he inquiry [is] not whether the plaintiff had in fact a good and valid cause of action, but whether this was apparently true, and it was accordingly the right of the plaintiff to invoke a judicial decision concerning the merits of the case presented for determination . . . .' " (Id. at p. 357, quoting Short v. Spragins (1898) 104 Ga. 628 [30 S.E. 810]; italics added.) **[28 Cal.4th 819]**

The Court of Appeal in Roberts, supra, 76 Cal.App.4th 375, relied upon much the same reasoning to hold that denial of a defense motion for summary judgment in the prior case established probable cause. In the underlying case in Roberts, an insurer's action against a physician for fraud and other causes of action, the trial court denied a defense motion for summary judgment on the fraud claim, finding material questions of fact. At trial, however, the fraud claim was resolved in the defendant's favor. (Id. at pp. 380-381.) In the physician's subsequent malicious prosecution action, the appellate court held the prior summary judgment denial was "a reliable indicator that probable cause [was] present." (Id. at p. 383.) Just as a trial victory by the underlying plaintiff "shows that the suit was not among the least meritorious of meritless suits, those which are totally meritless and thus lack probable cause," so too "[d]enial of a defendant's summary judgment motion provides similarly persuasive evidence that a suit does not totally lack merit." (Ibid.) A trial court's conclusion that issues of material fact remain for trial "necessarily impl[ies] that the judge finds at least some merit in the claim. The claimant may win, if certain material facts are decided favorably. This finding (unless disregarded) compels [the] conclusion that there is probable cause, because probable cause is lacking only in the total absence of merit." (Ibid.) Giving effect to this conclusion "serves the policy expressed in Sheldon Appel to discourage dubious malicious prosecution suits." (Id. at p. 384.) fn. 3

Several recent cases from other jurisdictions have reached the same conclusion as to denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case. In Davis v. Butler (Ga.Ct.App. 1999) 522 S.E.2d 548, for example, an action for abusive civil litigation (which required proof that the prior litigation was groundless, frivolous or vexatious) was held precluded where a defense motion for summary judgment had been denied in the underlying suit: "[S]uch denial of summary judgment constitutes a legal determination that the action has substantial justification, because it is not groundless or frivolous and can proceed to jury trial. Thus, it was not groundless, frivolous, or vexatious in fact or law." (Id. at p. 550.) Again, in Porous Media Corp. v. Pall Corp. (8th Cir. 1999) 186 F.3d 1077, the court, applying Minnesota law, held denial of a directed verdict for **[28 Cal.4th 820]** the

defense established probable cause for the underlying suit: "If reasonable jurors could find in Pall's favor, it follows that there was probable cause for bringing the counterclaims . . . . This is fatal to an essential element of Porous's claims for malicious prosecution." (Id. at p. 1080.) fn. 4

The same result has been held to follow under the federal Noerr-Pennington doctrine, fn. 5 which immunizes plaintiffs from counterclaims for, e.g., violation of antitrust law, based merely on having initiated nonsham business litigation. Sham litigation, for this purpose, is the "pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." (Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (1993) 508 U.S. 49, 62.) A finding of probable cause to bring the action therefore precludes a finding the action was a sham. (Id. at pp. 62-63.) Significantly for our purposes, the denial of summary judgment in the underlying action has been held to demonstrate the action was not a sham. (Harris Custom Builders, Inc. v. Hoffmeyer (N.D.Ill. 1993) 834 F.Supp. 256, 261-262.) "An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently meritorious to lead a reasonable litigant to conclude that they had some chance of success on the merits. Consequently, plaintiffs' infringement action is not a sham and, under Noerr-Pennington, cannot subject Harris to antitrust liability." (Ibid., italics added; accord, Porous Media Corp. v. Pall Corp., supra, 186 F.3d at p. 1080, fn. 4; Gen-Probe, Inc. v. Amoco Corp., Inc. (S.D.Cal. 1996) 926 F.Supp. 948, 958.)

[3a] The same considerations lead us to conclude that a trial court's denial of a motion to strike under section 425.16, on the ground that the plaintiff has established the requisite probability of success, establishes probable cause to bring the action, and precludes the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury. The rights of litigants and attorneys to bring nonfrivolous civil actions, " 'even if it is extremely unlikely that they will win' " (Sheldon Appel, supra, 47 Cal.3d at p. 885), would be unduly burdened were they exposed to tort liability for malicious prosecution for actions that had been found potentially meritorious under section 425.16. **[28 Cal.4th 821]**

In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' " (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1123, quoting Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 412.) Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548; accord, Rosenaur v. Scherer (2001) 88 Cal.App.4th 260, 274.) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. (Paul for Council v. Hanyecz (2001) 85 Cal.App.4th 1356, 1365.)

In denying a motion to strike on the ground that the plaintiff has established the requisite probability of success, therefore, the trial court necessarily concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient evidentiary showing and that the defendant's contrary showing, if any, does not defeat the plaintiff's as a matter of law. This determination establishes probable cause to bring the claim, for such an action clearly is not one that " 'any reasonable attorney would agree . . . is totally and completely without merit.' " (Sheldon Appel, supra, 47 Cal.3d at p. 885.) A claim that is legally sufficient and can be substantiated by competent evidence is, on the contrary, one that a "reasonable attorney would have thought . . . tenable." (Id. at p. 886.) The opposite rule, permitting such claims to form the basis for malicious prosecution liability, would unduly limit the right to invoke judicial remedies in pursuit of nonfrivolous claims. (Cf. Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., supra, 508 U.S. at p. 56 [imposition of antitrust liability for the initiation of nonsham litigation would tend to infringe First Amendment right of petition].)

We are not persuaded by plaintiffs' argument, echoing the dissenter in the Court of Appeal, that the denial of a section 425.16 motion does not demonstrate probable cause because the trial court, in deciding such a motion, determines only whether the plaintiff has substantiated a prima facie case and does not weigh one side's evidence against the other in the manner **[28 Cal.4th 822]** of a jury or court trying the merits. [4] A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious. (Sheldon Appel, supra, 47 Cal.3d at p. 885.) fn. 6 That the trial court does not, pursuant to section 425.16, weigh the evidence or decide disputed questions of fact does not, therefore, undermine the conclusion that a claim found to have a probability of success under that statute was brought with probable cause.

[3b] Nor, in this case, did the Kuzmich Court of Appeal's partial vacation of the trial court's section 425.16 order vitiate its effect. The appellate court in Kuzmich held the superior court legally erred in finding potential merit to the claims against two of the Kuzmich defendants, but not that the lower court decided the case irrationally. (See Fairchild v. Adams, supra, 170 Cal.App.2d at p. 15 [Supreme Court held jurors "to be in error--but not unreasonable--in their opinions"].) fn. 7 That the Kuzmich plaintiffs prevailed in the trial court shows their action was not so clearly and completely without merit as to justify tort liability for its initiation; though the Court of Appeal held the evidence of Wilson's and the MPA's liability insufficient to proceed, it did not hold or imply that a reasonable attorney could not have believed the case had potential merit. It would be a " 'hard law,' " indeed, that " 'would render a plaintiff liable in damages for instituting an action . . . in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside.' " (Cowles v. Carter, supra, 115 Cal.App.3d at p. 357.)

To support their contention that denial of a section 425.16 motion should not be deemed to establish probable cause, plaintiffs rely heavily on Lucchesi, supra, 158 Cal.App.3d 777, and on this court's favorable citation of **[28 Cal.4th 823]** Lucchesi in Crowley v. Katleman, supra, 8 Cal.4th 666 (Crowley), both of which we now examine. fn. 8

In the underlying action in Lucchesi, an action to cancel a deed and to quiet title, the court denied a defense motion for summary judgment; the Lucchesi opinion does not state, however, whether the motion was denied because of the existence of triable issues of material fact (Code Civ. Proc., § 437c, subd. (c)) or for other reasons. (Lucchesi, supra, 158 Cal.App.3d at p. 784.) The defendant ultimately prevailed at trial. (Ibid.)

In the defendant's ensuing malicious prosecution action, the appellate court rejected the former plaintiffs' contention that denial of the summary judgment motion in the underlying case established probable cause for bringing the action, in part because a summary judgment motion may be denied for reasons other than existence of triable issues: "A motion for summary judgment may be denied for any of several reasons: (1) there may be a triable issue as to a material fact; (2) the supporting affidavits may be insufficient; (3) the only proof as to a material fact may be an affidavit or declaration by the sole witness to the fact; or (4) a material fact may involve an individual's state of mind and that fact is sought to be established solely by that individual's affirmation thereof. [Citations.]" (Lucchesi, supra, 158 Cal.App.3d at p. 787; see Code Civ. Proc., § 437c, subds. (b) [motion may be denied if supporting papers do not include a separate statement of undisputed facts], (e) [motion may be denied if the only proof of one or more material facts is the declaration of the sole witness to the fact, or a material fact as to a person's state of mind is sought to be established solely by the person's testimony].)

The Lucchesi court's reasoning to this point is indisputably correct. Denial of a summary judgment motion on procedural or technical grounds, rather than for existence of triable issues of material fact, says nothing regarding the potential merit of the action and hence does not establish probable cause for its initiation. A parallel distinction can be made with regard to motions to strike under section 425.16: denial of the motion solely on technical or procedural grounds, for reasons that cannot be determined, or because the cause of action does not "aris[e] from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech" (§ 425.16, subd. **[28 Cal.4th 824]** (b)(1)), rather than because the plaintiff has shown a probability of success, would say nothing about the action's potential merit and would not establish probable cause.

Lucchesi continues, however, with the statement that "[e]ven when the denial is based on the first ground that a material issue of fact does exist, this procedure still falls short of a hearing on the merits." (Lucchesi, supra, 158 Cal.App.3d at p. 787.) The decision goes on to hold, as well, that denial of a nonsuit motion does not establish probable cause because a nonsuit must be denied "if there is any substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case," a conclusion that, like denial of summary judgment, is "not a determination on the merits." (Ibid.)

This latter part of Lucchesi's reasoning has been undermined by this court's subsequent decision in Sheldon Appel. As discussed above, our decision in that case clarified that probable cause to bring an action does not depend upon it being meritorious, as such, but upon it being arguably tenable, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. (Sheldon Appeal, supra, 47 Cal.3d at pp. 885-886.) Denial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict. As also discussed above, a claimant or attorney who is in possession of such evidence has the right to bring the claim, even where it is very doubtful the claim will ultimately prevail. (Id. at p. 885.) Lucchesi, supra, 158 Cal.App.3d 777, is disapproved to the extent it holds otherwise.

Our favorable citation of Lucchesi in Crowley did not amount to approval of all of Lucchesi's reasoning. The issue raised on review in Crowley was whether we should retain an existing rule that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." (Crowley, supra, 8 Cal.4th at p. 671.) In passing, we briefly addressed the defendants' unrelated argument, which they had raised but abandoned during the trial court proceedings, that denial of a defense summary adjudication motion in the underlying case established probable cause. We remarked merely that the point "was without merit for the reasons stated in [Lucchesi]." (Id. at p. 675, fn. 5.) Later in the opinion we again cited Lucchesi, this time for the proposition that denial of the summary adjudication motion was not a judgment on the merits for the purposes of the rule **[28 Cal.4th 825]** "that an interim adverse judgment on the merits, even though subsequently set aside on motion or on appeal, conclusively establishes probable cause for the prior action." (Crowley, supra, at pp. 692-693, fn. 15.)

We did not, in Crowley, indicate whether we approved the result in Lucchesi because, as the Lucchesi court had explained, summary judgment may be denied on any of a number of procedural or technical grounds, or whether we agreed with Lucchesi that even a determination of the existence of triable issues would not establish probable cause. Our favorable but passing mention of Lucchesi, therefore, did not constitute a full endorsement of its reasoning, which we have here disapproved in part for the reasons already given.

Plaintiffs also contend that the determination of probable cause from a finding or ruling in the underlying case is actually an aspect of collateral estoppel, and hence no such determination may be made in circumstances where no collateral estoppel would arise, as where the prior decision was neither final nor on the merits; application of collateral estoppel in these circumstances, plaintiffs argue, violates their due process and jury trial rights. In our view, plaintiffs' invocation of collateral estoppel is a red herring. [5] The determination of probable cause does not operate, like collateral estoppel, to preclude relitigation of an issue of fact. Probable cause, for purposes of a malicious prosecution action, is a legal issue, not a factual one. (Sheldon Appeal, supra, 47 Cal.3d at pp. 874-

877.) The determination arises, moreover, not because the same issue was litigated in the prior case, but because the result in the prior case (whether a verdict or judgment in the plaintiff's favor, or denial of a defense summary judgment or SLAPP motion) establishes the existence of probable cause as a matter of law, absent proof of fraud or perjury. The rule derives from the definition of probable cause--which is framed so as not to infringe on the right to bring nonfrivolous litigation--rather than from the doctrine of res judicata or any of its branches.

Lastly, plaintiffs contend that application of the probable cause determination in these circumstances contravenes the terms, and defeats the intent, of the anti-SLAPP statute. On the first point, plaintiffs cite section 425.16, subdivision (b)(3), which provides that a trial court's determination of a probability that a claim will prevail, in denying a motion to strike, is inadmissible "at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination." This provision, however, clearly addresses the effects of the motion's denial in further proceedings in the same case, not in derivative litigation commenced subsequently. **[28 Cal.4th 826]**

As to legislative intent, plaintiffs suggest that a rule equating denial of the section 425.16 motion to strike with probable cause will deter SLAPP defendants from taking advantage of section 425.16, for fear that denial will bar any malicious prosecution action, thus defeating the legislative intent that the anti-SLAPP procedures be employed to quickly end abusive litigation against public participation and speech. We are not persuaded the statutory scheme will be undermined in this manner. Given the low standard of probable cause under Sheldon Appel, supra, 47 Cal.3d 863, and our holding there that probable cause is decided by the court, defendants can hardly be confident in their ability to maintain a malicious prosecution action even if they forgo the motion to strike and defeat a SLAPP suit at trial. The anti-SLAPP statute, on the other hand, provides for an award of attorney fees and costs to the defendant who makes, and prevails on, a motion to strike. (§ 425.16, subd. (c).) These considerations should provide adequate incentive for a defendant who desires the speedy and low-cost termination of abusive litigation against him or her, and who is confident the litigation is truly meritless, to employ the statutory procedures even at some risk of losing the opportunity for a subsequent malicious prosecution suit.

[3c] For the above reasons, we conclude the Kuzmich court's denial of the defendants' motion to strike under section 425.16 established probable cause to bring the Kuzmich action. Plaintiffs in the present malicious prosecution action have not attempted to show that that ruling was obtained by fraud or perjured testimony. Probable cause therefore existed as a matter of law for initiation of Kuzmich, negating a necessary element of the malicious prosecution action. As the Court of Appeal also concluded, the demurrers to that cause of action were therefore properly sustained.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

## BROWN, J., Concurring:

Although I concur with most of the majority's reasoning, I write separately because I find its distinction of Crowley v. Katleman (1994) 8 Cal.4th 666 (Crowley) unpersuasive. (See maj. opn., ante, at pp. 824-825.) According to the majority, "[w]e did not, in Crowley, indicate whether we approved the result in Lucchesi [v. Giannini & Uniack (1984) 158 Cal.App.3d 777] because . . . summary judgment may be denied on any of a number of procedural or technical grounds, or whether we agreed with Lucchesi that even a determination of the existence of triable issues would not establish probable cause." **[28 Cal.4th 827]** (Maj. opn., ante, at p. 825.) Based on this ambiguity in Crowley, the majority concludes that "[o]ur favorable but passing mention of Lucchesi . . . did not constitute a full endorsement of its reasoning . . . ." (Ibid..) After reviewing Crowley, I disagree.

In Crowley, Carole Katleman, represented by counsel (together, the defendants), filed a will contest, alleging six separate grounds for invalidating the will. (Crowley, supra, 8 Cal.4th at p. 673.) Arthur J. Crowley, the principal beneficiary of the will, filed a motion for summary adjudication. (Ibid.) The probate court granted the motion as to one of the grounds, but "denied the motion as to the remaining grounds, ruling there were triable issues of material fact as to each." (Ibid., italics added.) After prevailing in the will contest, Crowley sued the defendants for malicious prosecution. (Id. at p. 674.) In their demurrer to the malicious prosecution action, the defendants contended, "by denying Crowley's motion for summary adjudication of issues as to all grounds of the will contest except lack of due execution, the probate court 'necessarily determined' there was probable cause for the remaining grounds . . . ." (Id. at p. 675.) We, however, rejected this contention in a footnote, finding it "was without merit for the reasons stated in Lucchesi . . . ." (Crowley, supra, 8 Cal.4th at p. 675, fn. 5.)

Because the probate court denied the motion for summary adjudication in the will contest on the merits, our footnote in Crowley necessarily endorsed Lucchesi's holding that "a determination of the existence of triable issues would not establish probable cause." (Maj. opn., ante, at p. 825.) Like the majority, I disagree with this holding. (See id. at pp. 824-825.) I would therefore disapprove of Crowley to the extent it adopted this holding of Lucchesi.

FN *. Pursuant to California Constitution, article VI, section 21.

FN 1. In a separate ruling, the Kuzmich trial court also issued a permanent injunction against harassment. The Kuzmich Court of Appeal reversed the grant of injunctive relief on procedural grounds. In the present case, the Court of Appeal held that the Kuzmich trial court's grant of injunctive relief established probable cause for that cause of action, but neither plaintiffs' petition for review nor any of defendants' answers raises for our review the correctness of that holding. We therefore do not address the effect of the order for injunctive relief.

FN 2. Bealmear v. So. Cal. Edison Co. (1943) 22 Cal.2d 337, 340; Carpenter v. Sibley (1908) 153 Cal. 215, 218; Holliday v. Holliday (1898) 123 Cal. 26, 32; Cowles v. Carter

(1981) 115 Cal.App.3d 350, 356, 359; Fairchild v. Adams (1959) 170 Cal.App.2d 10, 15; see also Crescent Live Stock Co. v. Butchers' Union (1887) 120 U.S. 141, 149-151; Restatement Second of Torts, section 675, comment b, page 458; Prosser and Keeton, The Law of Torts (5th ed. 1984) section 120, page 894.

FN 3. Roberts is the only published California decision holding denial of a defense summary judgment motion demonstrates the existence of probable cause. That holding, however, was prefigured in Hufstedler, Kaus & Ettinger v. Superior Court (1996) 42 Cal.App.4th 55, 69, where the appellate court observed that denial of summary judgment in the underlying libel case, while not dispositive, supported the conclusion that probable cause existed for that action, since "if the statements [sued upon in the libel case] were so clearly expressions of opinion that any reasonable attorney would have so viewed them, [the underlying defendant's] motion for summary judgment would have been granted."

FN 4. Accord, Butler v. Ratner (App.Div. 1994) 619 N.Y.S.2d 871, 874 (issuance of temporary restraining order creates presumption of probable cause); Skinder-Strauss v. Mass. Continuing Legal Educ. (D.Mass. 1994) 870 F.Supp. 8, 11 (claim that survives summary judgment does not lack objective merit); contra, Kirk v. Marcum (Ky.Ct.App. 1986) 713 S.W.2d 481, 485 (denial of directed verdict for defense does not establish probable cause).

FN 5. So called after Eastern R. Conf. v. Noerr Motors (1961) 365 U.S. 127 and Mine Workers v. Pennington (1965) 381 U.S. 657.

FN 6. Indeed, a plaintiff or his or her attorney may not be aware, when initiating the action, of evidence in the defendant's possession that weighs against the claim. Considering the plaintiff's prima facie case alone is appropriate for this reason as well, for probable cause to bring an action depends on the facts known to the litigant or attorney at the time the action is brought. (Sheldon Appel, supra, 47 Cal.3d at pp. 880-884.)

FN 7. See also Butler v. Ratner, supra, 619 N.Y.S.2d at pages 873-874 (issuance of temporary restraining order, though vacated by appellate court, creates presumption of probable cause); Chapman v. Grimm & Grimm, P.C. (Ind.Ct.App. 1994) 638 N.E.2d 462, 464-465 (contempt citation against defendant in child visitation action, though reversed by appellate court for lack of jurisdiction, conclusively establishes probable cause to bring action).

FN 8. The dissenting justice below, in addition to relying on Lucchesi and Crowley, cited decisions refusing effect to preliminary rulings in criminal cases. (See, e.g., Diemer v. Herber (1888) 75 Cal. 287, 290 [magistrate's holdover order]; De La Riva v. Owl Drug Co. (1967) 253 Cal.App.2d 593, 595-597 [denial of motion to set aside information].) These decisions are inapposite, however, because our decision here rests on the relatively low standard of probable cause required to bring a civil action. (Sheldon Appel, supra, 47 Cal.3d at p. 885.)

C

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FRANK LACHAPELLE, | |
| Petitioner, | E058014 |
| v. | (Super.Ct.No. INC1101291) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| HANSEN MCCOY INVESTMENTS, LLC, et al., | |
| Real Parties in Interest. | |

APPEAL from the Superior Court of Riverside County. Jeffrey L. Gunther, Judge. (Retired judge of the Sacramento Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Petition granted.

John C. Torjesen & Associates and John C. Torjesen for Petitioner.

No appearance for Respondent.

Theresa A. Jones for Real Parties in Interest.

1

In this matter we have reviewed the petition and the opposition thereto, which we conclude adequately address the issues raised by the petition. We have determined that resolution of the matter involves the application of settled principles of law, and that issuance of a peremptory writ in the first instance is therefore appropriate. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178.)

In the underlying action, petitioner alleges that the security instrument that was executed and recorded when he refinanced his home is void because it was procured by fraud and forgery. Thus, he asserts the real parties in interest, who were purchasers at a non-judicial foreclosure sale and their successors in interest, did not acquire valid title. He asks in an amended pleading for cancellation of their deeds and for quiet title. Petitioner filed a notice of lis pendens on February 25. 2011.

Real parties moved to expunge the lis pendens on the ground that petitioner cannot establish the probable validity of his claim. They contend that their trustee's deed relates back to the recording of the trust deed in 2008 and petitioner can claim no present interest in the property. They also contend that his claim of fraud can form a basis for a claim for money damages only—and not a claim for title or possession of the property.

The trial court ordered the notice of lis pendens expunged. In its tentative ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." The court recited the facts that the notice of default

2

here showed that the trust deed foreclosed upon was last modified and recorded on November 5, 2009; petitioner's first lis pendens notice was not recorded until February 15, 2011, and that his second one naming moving parties was not recorded until January 3, 2013. "Thus, the moving defendants' trustees' deed relates back to the date of 11/5/09 trust deed and is effective prior to any notice of lis pendens. As a result, there is no basis for a lis pendens to remain against the property."

The parties presented no additional argument at the hearing and the tentative ruling became the court's ruling. Petitioner seeks review of this ruling pursuant to Code of Civil Code section 405.39. We conclude that the court's stated reasons do not support the order for expungement.

Justification for setting aside a foreclosure sale is that the deed of trust is void. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104-105; see *Stockton v. Newman* (1957) 148 Cal.App.2d 558, 563-564 [trustor sought rescission of promissory note on grounds of fraud].) There, Lona's home was sold at a nonjudicial foreclosure sale. Lona sued the lender, the loan servicer, and others to set aside the trustee's sale, claiming he was a victim of predatory lending in that the loan broker ignored his inability to repay the loan and Lona, lacking fluency in English, did not understand many of the details of the transaction. The court reversed summary judgment for the lenders, concluding that Lona had raised a triable issue that the underlying loan was illegal and unconscionable, thus excusing him from the requirement he tender full payment of the debt to obtain relief.

Plaintiff's notice of lis pendens is not a lien itself, but simply gives notice that plaintiff was challenging the validity of the trust instrument. Here, at least in the Fifth

3

Amended Complaint, petitioner is claiming that the trust deed is void because of fraud in the inducement and forgery. Petitioner's position is much like Lona's—the security instrument was void and he filed suit challenging it. Thereafter, the nonjudicial foreclosure sale took place, which he now seeks to set aside. Indeed, in the same section cited by the trial court (3rd. ed., § 10.208), Miller and Starr also states that in certain cases the purchaser's title following a foreclosure sale is subject to being recovered by the trustor by an attack on the validity of the instrument. Thus, it appears he has stated grounds to set aside the sale based on the invalidity of the trust deed—he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens

Real parties' argument that fraud is simply a monetary claim is not well taken, and we note that petitioner alleges that he acted to rescind the original agreement based on this fraud and forgery. Real parties also argue that the judgment of foreclosure and the eviction have conclusive effect, but in the case relied on, *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, there was a claim that there were irregularities in the foreclosure sale itself. The judgment of foreclosure was conclusive as to the purchaser's title. Here, as discussed above, petitioner is challenging the security instrument as void. Thus, the foreclosure judgment is not conclusive that that instrument was valid.

We offer no opinion whether the trial court may correctly base an order for expungement on other factors showing petitioner cannot establish the probable validity of his claim. We merely conclude that the trial court's ruling was based on a narrow ground

4

regarding the priority of the purchaser's deed, which is not justified based on the face of petitioner's pleadings. Thus, we conclude that the petition must be granted and the trial court directed to reconsider the motion. The trial court is in no way precluded on reconsideration from reaching the same result, i.e., finding that petitioner has not shown the probable validity of his claim under Code of Civil Procedure section 405.32.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Riverside Superior Court to set aside and vacate its order granting the motion to expunge lis pendens and to reconsider the matter in accordance with the views expressed herein.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner is to recover his costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
                                                          J.

We concur:

RAMIREZ _____
                    P. J.

KING _____
                    J.

5

propensity to engage in frivolous litigation. I do admit that I made many unintended tactical errors in my attempts to prosecute a complex case, with complicated issues of first impression, as a novice pro se litigator with limited trial court experience and skills.

5.   Lastly, the apparent fraud on the court committed by Edward Bravenec and Glenn Deadman in Case No. 2014-CI-07644 has once again increased and distorted litigation in which I seek redress for my grievances, and to cause them to cease and desist from defalcating the proceeds of deed settlements in which I have a paramount interest.

Date:   February 24, 2015

_____
Rowland J. Martin

# C

Filed 11/28/12

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LA JOLLA GROUP II et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>DANIEL A. BRUCE et al.,<br><br>Defendants and Respondents. | F061829<br><br>(Super. Ct. No. 10CECG02268)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Donald S. Black, Judge.

Wilkins, Drolshagen & Czeshinski, James H. Wilkins and Quentin Cedar for Plaintiffs and Appellants.

Betts, Rubin & McGuinness, James B. Betts and Joseph D. Rubin for Defendants and Respondents.

When their family home in Fresno, California (the Property) was foreclosed on pursuant to a forged or fraudulent second deed of trust, Rebecca and Victorino Baquiran filed an action to quiet title to the Property and recorded a lis pendens. Thereafter, the party that had purchased the Property in good faith at the foreclosure sale, La Jolla Group II and its partners, Leroy Kleim and Alan Boyajian (collectively appellants), filed a complaint for slander of title against the Baquirans and the Baquirans' attorney, Daniel A. Bruce and the Law Office of Zinkin & Bruce (collectively respondents), alleging that the recording of the lis pendens was unprivileged and wrongfully prevented appellants from being able to sell the Property. Respondents then filed a special motion to strike the slander of title complaint under Code of Civil Procedure section 425.16 (also known as an "anti-SLAPP" motion).[1] In ruling on the motion, the trial court concluded that (1) the recording of the lis pendens was a protected activity under section 425.16 and (2) appellants did not establish a probability of prevailing on their slander of title complaint. The trial court reached the latter conclusion because the evidence of forgery reflected the second deed of trust was void (not merely voidable) and because the absolute privilege of Civil Code section 47, subdivision (b) (hereafter Civil Code section 47(b)) applied to the recording of the lis pendens. Accordingly, respondents' special motion to strike was granted. Appellants appeal from that order. We will affirm.

## FACTS AND PROCEDURAL HISTORY

On or about June 28, 1989, Victorino Baquiran purchased the Property. At that time, Mr. Baquiran executed a first deed of trust to secure the loan used to purchase the Property. His wife, Rebecca Baquiran, was placed on title to the Property and the

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure. The term "SLAPP" is "an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2.

Baquirans made it their family home for more than 16 years, until they were evicted by appellants in June 2005.

The Forged Second Deed of Trust and Resulting Foreclosure

In July 2003, the Baquirans received notice that foreclosure proceedings were being commenced based on a second deed of trust on the Property securing a promissory note in favor of Steven and Carrie Mahlum. Prior to receiving that notice, the Baquirans had no knowledge that a deed of trust in favor of the Mahlums had been recorded on the Property. Indeed, the Baquirans had never borrowed money from, or even met, the Mahlums. The Mahlums likewise acknowledged that although they had received some payments from Zarrell Williams, which they thought related to the second deed of trust, they had never received any payments from the Baquirans.

It was later discovered that the second deed of trust was procured through the fraud or forgery of the Baquirans' former mortgage broker, Williams. Williams had brokered a refinance of the Baquirans' first deed of trust in April 1997, just prior to the date appearing on the second deed of trust naming the Mahlums as beneficiaries. Although the Baquirans admitted their signatures on the second deed of trust appeared to be authentic, they contended they were deceived because the document was materially altered and they never intended to sign a deed of trust in favor of the Mahlums. It was the Baquirans' theory that during the refinance transaction in 1997, Williams, by means of fraud and deceit, had them execute documents not related to or utilized in the refinance, which documents Williams later altered to fraudulently obtain a loan from the Mahlums in the Baquirans' name, and then Williams converted the proceeds of that loan for his own use. James A. Blanco, a handwriting and document expert retained by respondents, examined the second deed of trust and concluded that it had been materially altered. At various places, information had been covered over with "whiteout" and replaced by other information. For example, under the beneficiary section of the

3.

document, two names were covered over using a masking fluid and replaced with the names of Steven and Carrie Mahlum.

On February 24, 2004, before the forgery by Williams had been brought to light, the Property was foreclosed upon and sold at a nonjudicial foreclosure sale to La Jolla Group II and David and Linda Hovannisian. On March 17, 2004, appellants initiated eviction proceedings against the Baquirans. The Baquirans initially hired attorney Joseph C. Raineri, who was able to obtain a stay of eviction until January 2005. However, the Baquirans eventually concluded that Mr. Raineri had abandoned them and was not protecting their rights. Thereafter, in February 2005, the Baquirans retained Mr. Bruce to represent them in this matter.

The Baquirans' Complaint to Quiet Title and Lis Pendens

On May 25, 2005, the Baquirans, represented by Mr. Bruce, filed a complaint to quiet title against, among others, appellant La Jolla Group II. In that complaint, the Baquirans alleged the disputed second deed of trust was "a forgery and/or a fraudulently obtained document that was created by Williams," and they sought (1) to cancel the purported foreclosure sale based upon the forged deed of trust and (2) to restore possession and title of the Property to the Baquirans. On June 14, 2005, the Baquirans recorded a notice of pending action (the lis pendens) concerning the Property. The pending action specified in the lis pendens was the Baquirans' complaint to quiet title. The lis pendens was signed by Mr. Bruce.

On December 16, 2005, appellant La Jolla Group II filed a motion to expunge the lis pendens. On February 2, 2006, the motion proceeded to hearing. The Honorable Judge Alan M. Simpson considered the papers, evidence and arguments presented by the parties and declined to expunge the lis pendens. As part of his written order denying the motion, Judge Simpson found that the Baquirans "ha[d] shown the probable validity of their claim." The written order further explained: "The Rebecca Baquiran declaration,

4.

combined with the evidence of alteration of the deed of trust pursuant to which the property was sold, support [the Baquirans'] theory that the deed of trust was a forgery."

Criminal Conviction of Zarrell Williams

Meanwhile, criminal charges were filed by the Fresno County District Attorney against Williams for multiple acts of theft, forgery and similar crimes against several victims. As to Williams's conduct perpetrated against the Baquirans, the consolidated information specifically charged Williams with four distinct crimes: grand theft of money, forgery of a deed of trust, knowingly performing notarial act on a false or forged trust deed, and procuring or offering a false or forged instrument (deed of trust) for filing or recording. The consolidated information set forth the following facts in support of these particular counts:[2] (1) Williams was a loan broker who first worked with Rebecca Baquiran in the early 1990's when she obtained a personal loan, and again in 1997 when he arranged a consolidation loan for the Baquirans through EquiCredit. In the same time period, Williams made a number of hard money property loans on behalf of the Mahlums. (2) When the Mahlums failed to receive certain payments on those property loans, Williams advised them that he had a loan, including a note and deed of trust, on the Property. (3) Williams produced for the Mahlums a deed of trust and assignment of rents purportedly signed by the Baquirans that had been filed with the Fresno County Recorder's Office on June 4, 1998. That deed of trust was subsequently found to have been altered by Williams. (4) The deed of trust and assignment of rents was forged by Williams with intent to defraud. (5) The forged deed of trust was notarized by Williams with knowledge that it contained a false statement or was forged.

On September 13, 2006, the jury found Williams guilty as charged on each of the counts relating to the Property, including forgery of the deed of trust, knowingly

---

[2]    The counts are numbered here for convenience; such enumeration did not appear in the original.

performing a notarial act on a false or forged trust deed, and procuring or offering a false or forged deed of trust for filing or recording. Williams was also convicted on all but one of the other crimes charged against him that involved other defrauded victims. He was sentenced to serve three years four months in prison.

Withdrawal of the Lis Pendens

On July 6, 2009, the Baquirans recorded a notice of withdrawal of lis pendens. According to Mr. Bruce, the lis pendens was withdrawn as part of a negotiated settlement reached between the Baquirans, the Mahlums and All-Cal Foreclosure Services, Inc. The Mahlums and All-Cal Foreclosure Services, Inc. were additional defendants in the quiet title action.

Appellants' Complaint for Slander of Title

On June 29, 2010, appellants filed their complaint for slander of title against respondents. The complaint for slander of title alleged that the recording of the lis pendens was not privileged and wrongfully prevented appellants from being able to sell the Property from June 2005 to July 2009, resulting in damages to appellants. Allegedly, the Baquirans' admission that their signatures on the second deed of trust were authentic established that there was no justifiable basis for alleging the second deed of trust was a forgery or for seeking to invalidate the foreclosure sale. Thus, according to the complaint for slander of title, the recording of the lis pendens was false, wrongful and unprivileged since it purportedly had no evidentiary basis.

Respondents' Special Motion to Strike

On August 6, 2010, respondents moved to strike appellants' slander of title complaint pursuant to section 425.16 (the "anti-SLAPP" statute) on the grounds that (1) recording the lis pendens was a protected activity under the statute (see § 425.16, subd. (e)) and (2) appellants could not establish a probability of prevailing on the slander of title claim (§ 425.16, subd. (b)(1)). In their opposition, appellants conceded that the filing of the lis pendens was a protected activity under the statute. Therefore, the focus of

6.

the motion was on the second step or prong of the analysis under section 425.16—that is, whether appellants could show a probability of prevailing on the merits of their complaint for slander of title.

After considering the evidence and arguments presented by the parties, the trial court found that the disputed deed of trust was a forgery since it had been materially altered by Williams. Therefore, it was "void" and not merely voidable; and, as a consequence, it could not convey title—not even to a good faith purchaser at a foreclosure sale. The trial court further held that under the circumstances, the litigation privilege of Civil Code section 47(b) was applicable to the recording of the lis pendens. For these reasons, the trial court concluded appellants did not have a probability of prevailing and, therefore, the special motion to strike was granted.

Appellants' notice of appeal followed.

## DISCUSSION

### I.    Standard of Review

We review de novo the trial court's ruling on an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) "Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits. [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock.com*).) In our de novo review, "'[w]e consider "the pleadings, and supporting and opposing affidavits ... upon which the liability or defense is based." (§ 425, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra,* at p. 326.)

## II.    Overview of the Anti-SLAPP Statute

"[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.) "The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.' [Citations.]" (*Ibid.*) The resolution of an anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).)

The present appeal concerns, in particular, the second step under the statutory analysis—namely, whether appellants have demonstrated a probability of prevailing on their claim for slander of title. (§ 425.16, subd. (b)(1).) In order to establish a probability of prevailing on a cause of action in the context of an anti-SLAPP motion, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]'" (*Ibid.*) That is, the plaintiff must "'"make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.'"" [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16,

subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Accordingly, "the motion to strike should be granted if the defendant 'defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344.)

## III. Motion to Strike Under Section 425.16 Was Properly Granted

Under the first step of the analysis under section 425.16, respondents must make a threshold showing that the challenged cause of action arose from protected activity within the meaning of the statute. (§ 425.16, subd. (b)(1); *Equilon Enterprises, supra,* 29 Cal.4th at p. 67; *Overstock.com, supra,* 151 Cal.App.4th at p. 699.) Here, the complaint for slander of title was premised on a single activity: the recording of the lis pendens. Unquestionably, the recording of the lis pendens constituted a written statement made in connection with issues under consideration in a judicial proceeding—that is, the underlying quiet title action. (§ 425.16, subd. (e).)[3] Therefore, as conceded by appellants in their opening brief, the challenged complaint for slander of title arose out of protected activity under section 425.16, and respondents satisfied their burden under the first step of the analysis.

We now turn to the heart of this appeal, which is the *second step* of the statutory analysis. In response to the anti-SLAPP motion, once respondents made their initial threshold showing, the burden shifted to appellants to demonstrate a probability of

---

[3]     Section 760.010, et seq., which governs quiet title actions, provides that immediately upon commencement of such an action, the plaintiff *shall* file a lis pendens in the office of the county recorder. (§ 761.010.)

9.

prevailing on their claim. (§ 425.16, subd. (b)(1); *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 805). That meant appellants had to state and substantiate a legally sufficient cause of action for slander of title. (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1056.) As noted above, we consider (but we do not weigh) the evidence presented by both sides, and we may decide that respondents' evidence defeats appellants' showing as a matter of law, "'such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Carver v. Bonds, supra*, 135 Cal.App.4th at p. 344.)

As explained below, we conclude that appellants have not established a tenable claim for slander of title. We reach this conclusion on two separate grounds: *First*, the absolute privilege under Civil Code section 47(b) was applicable to the recording of the lis pendens in this case. *Second*, the evidence of forgery established as a matter of law that the second deed of trust was void and, therefore, appellants never acquired title to the Property. Each of these grounds would be a sufficient basis to conclude that appellants have no probability of prevailing on their claim. We shall discuss them separately, beginning with the issue of privilege.

A.    Privilege of Civil Code Section 47(b)

Appellants' sole cause of action was for slander of title. The elements of a cause of action for slander of title are (1) a publication, which is (2) *without privilege* or justification, (3) false, and (4) causes pecuniary loss. (*Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1051.) The critical question here is whether the publication in the present case—the lis pendens recorded by the Baquirans—was privileged under Civil Code section 47(b).

10.

Civil Code section 47(b) provides that, with certain exceptions, a publication made in any judicial proceeding is privileged.[4] Because of the vital purposes served by this privilege, it is "'absolute'" in nature and applies to all causes of action except malicious prosecution. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360; *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215.) The purposes of Civil Code section 47(b) are "'to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.' [Citation.]" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.) To further these important goals, the privilege is applied broadly. (*Ibid.*)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212.) "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057.) It applies to "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg v. Anderson, supra,* at p. 212.)

The publication at issue here was the lis pendens recorded in connection with the Baquirans' complaint to quiet title to the Property. "'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to

---

[4] Civil Code section 47(b) is often referred to as the litigation privilege. (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057.)

11.

possession of the real property described in the notice.' [Citation.] A lis pendens may be filed by any party in an action who asserts a 'real property claim.' (Code Civ. Proc., § 405.20.) Section 405.4 defines a "'Real property claim'" as 'the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property ....'" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647, fn. omitted.)

Previously, the absolute privilege of Civil Code section 47(b) has been broadly applied to the recording of a lis pendens. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 379 (*Albertson*).) "If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches. [Citations.] It therefore attaches to the recordation of a notice of *lis pendens*, for such a publication is permitted by law, and like other documents that may be filed in an action, it has a reasonable relation thereto and it is immaterial that it is recorded with the county recorder instead of being filed with the county clerk." (*Id.* at p. 381.)

*Albertson's* holding, however, has been somewhat limited or "partially abrogated" by a 1992 amendment to Civil Code section 47. (*Park 100 Investment Group II, LLC v. Ryan, supra*, 180 Cal.App.4th at p. 813, fn. 5; *Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1378-1379 (*Palmer*).) That amendment added the provision that is currently set forth at Civil Code section 47, subdivision (b)(4) (hereafter Civil Code section 47(b)(4)), which states: "A recorded lis pendens is not a privileged publication *unless* it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." (Italics added.) As a result of this provision, "the litigation privilege ... applies *if* the lis pendens (1) identifies an action 'previously filed' in a court of competent jurisdiction that (2) affects title or right to possession of real property." (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 665 (*Alpha & Omega*), italics added.)

12.

Here, the subject lis pendens expressly identified the Baquirans' previously filed action—namely, the Baquirans' complaint to quiet title. In addition, that action was clearly one that affected title or right to possession of the Property, since it sought to quiet title to the Property through cancellation of the foreclosure sale and restoration of title and possession to the Baquirans, all on the ground that the second deed of trust was a forgery. Thus, the statutory conditions for application of the privilege to a recorded lis pendens, as set forth in Civil Code section 47(b)(4), have plainly been satisfied in this case. It follows that the privilege of Civil Code section 47(b) applies to the subject lis pendens, thereby precluding liability for slander of title.

Appellants nevertheless contend the privilege of Civil Code section 47(b) does not apply to the lis pendens in this case. They argue that because the Baquirans' complaint to quiet title lacked *evidentiary merit* to the extent the facts showed the second deed of trust was merely "voidable" rather than void, the privilege did not attach. In so arguing, appellants take the position that the privilege only applies to a recorded lis pendens if it is shown that the underlying action has evidentiary merit. In support of that proposition, appellants rely on language from *Palmer, supra,* 109 Cal.App.4th 1367, a prior decision of this court. We now consider that decision at length.

In *Palmer,* the plaintiffs acquired ownership of a house in Bakersfield by purchasing it at a sheriff's sale that took place to satisfy a judgment lien in a creditor's collection action. Later, the former owners filed a bankruptcy action and also filed an appeal in the collection action. In connection with these court filings, the former owners recorded a lis pendens that effectively prevented the plaintiffs from being able to sell or refinance the property. (*Palmer, supra,* 109 Cal.App.4th at pp. 1370-1374.) The plaintiffs then sued the former owners for slander of title, asserting that the actions brought by the former owners were not the type of proceedings for which it was appropriate to file a lis pendens. (*Id.* at p. 1381.) *Palmer* agreed with the plaintiffs' theory, holding that the privilege of Civil Code section 47(b) did not apply to the lis

13.

pendens in question, since the underlying collection and bankruptcy actions filed by the former owners did not allege a real property claim. (*Palmer, supra*, at p. 1381.) On that record, the holding in *Palmer* was correct.

The language relied on herein by appellants came at the end of *Palmer's* discussion of developments in the law. *Palmer* summarized the revisions enacted in 1992 to the lis pendens statutes, in which former sections 409 to 409.9 were repealed and replaced by sections 405 to 405.61. (*Palmer, supra*, 109 Cal.App.4th at pp. 1377-1378.) *Palmer* noted that under the new statutory scheme, a motion to expunge a lis pendens could be based not only on a failure to plead a real property claim (§ 405.31), but also on a failure of the claimant to establish by a preponderance of the evidence the probable validity of the real property claim (§ 405.32).[5] (*Palmer, supra*, at pp. 1377-1378.) Thus, the revised lis pendens statutes provided that a lack of evidentiary merit would be a ground for expungement: "'If the claimant *does* plead a real property claim, but the claim pleaded has no evidentiary merit, the lis pendens must be expunged upon motion under [section] 405.32.'" (*Id.* at p. 1378.)

*Palmer* observed that in the same year that these revisions to the lis pendens statutes took place (1992), the Legislature *also* amended section 47 of the Civil Code to add subdivision (b)(3), now subdivision (b)(4), which "'partially abrogated'" the holding of *Albertson* that recording a notice of lis pendens is absolutely privileged. (*Palmer, supra*, 109 Cal.App.4th at pp. 1378-1379.) After quoting the language of Civil Code section 47(b)(4), *Palmer* concluded its summary of the lis pendens statutes and Civil Code section 47(b)(4) with the following statement: "Therefore, if the pleading filed by the claimant in the underlying action does not allege a real property claim, *or the alleged*

---

5    Section 405.3 states that "'[p]robable validity'" means "with respect to a real property claim," it is "more likely than not that the claimant will obtain a judgment against the defendant on the claim."

14.

*claim lacks evidentiary merit, the lis pendens, in addition to being subject to expungement, is not privileged.* It follows the lis pendens in that situation may be the basis for an action for slander of title." (*Palmer, supra,* at p. 1380, italics added.)

Appellants rely on the above quoted language in *Palmer, supra,* 109 Cal.App.4th 1367 to support their position that the litigation privilege does not apply to a lis pendens if the underlying action is lacking in evidentiary merit. Respondents counter that Civil Code section 47(b)(4) contains no evidentiary merit exception and they argue it would be improper to insert such an exception into the statute. In this regard, respondents argue that the subject language in *Palmer,* to the extent it added an evidentiary test to the privilege statute, is not a correct statement of the law. We agree with respondents.

In *Alpha & Omega, supra,* 200 Cal.App.4th 656, the Fourth District Court of Appeal recently examined Civil Code section 47(b)(4) and concluded there is no "'lack of evidentiary merit exception'" under the statute. (*Alpha & Omega, supra,* at p. 667.) There, as in our case, a party suing for slander of title had argued—based on the language in *Palmer, supra,* 109 Cal.App.4th 1367—that the privilege did not attach if the underlying real property claim lacked evidentiary merit. (*Alpha & Omega, supra,* at p. 666.) The Court of Appeal explained its rejection of that interpretation of the statutory privilege:

> "We reject Alpha's interpretation of subdivision (b)(4) of Civil Code section 47. In discerning the Legislature's intent, we look to the words of the statute, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' [Citations.] [¶] The language of subdivision (b)(4) of Civil Code section 47 is not ambiguous and in any event is not reasonably susceptible to a construction that would create an *additional* exception to the absolute litigation privilege based on the lack of 'evidentiary merit' of a claimaint's real property claim in connection with a recorded lis pendens." (*Alpha & Omega, supra,* 200 Cal.App.4th at pp. 666-667.)

We believe this analysis of the privilege statute is correct. Civil Code section 47(b)(4) does not contain a lack of "'evidentiary merit'" exception to the

litigation privilege, and it would be improper for us to insert what the Legislature has plainly omitted. (*Alpha & Omega, supra*, 200 Cal.App.4th at pp. 666-667; see § 1858 [courts role is to declare terms of a statute, not to "insert what has been omitted"].) "'It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.] "An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein."' [Citation.]" (*Mutual Life Ins. Co v. City of Los Angeles* (1990) 50 Cal.3d 402, 412.)

Civil Code section 47(b)(4) clearly describes the conditions for application of the privilege to a recorded lis pendens as follows: "A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." (Civ. Code, § 47(b)(4).) Those conditions are: (1) the lis pendens must identify a previously filed action and (2) the previously filed action must be one that affects title or right of possession of real property. We decline to add a third requirement that there must also be evidentiary merit.[6]

We also agree with the analysis in *Alpha & Omega* that this construction of the statute is further supported by the statutory definition of what constitutes a real property claim. (See *Alpha & Omega, supra*, 200 Cal.App.4th at p. 667.) A party who "asserts a real property claim" may record a lis pendens. (§ 405.20.) Section 405.4 defines a "'[r]eal property claim'" as "the cause or causes of action in a pleading which would, if

---

[6] It is apparent that *Palmer, supra*, 109 Cal.App.4th 1367, in adding an evidentiary requirement, erroneously merged the evidentiary standard for a motion to expunge into the distinct question of whether the privilege applies.

16.

meritorious, affect (a) title to, or the right to possession of, specific real property ...." Thus, "[s]ection 405.4 does not define [a] 'real property claim,' or lack thereof, on the basis of the strength or weakness of the *evidence* to support that claim. Instead, it is clear from the plain language of section 405.4 that a 'real property claim' is determined from the cause or causes of action set forth in the pleading(s)." (*Alpha & Omega, supra,* 200 Cal.App.4th at p. 667.) Consistent with this definition, Civil Code section 47(b)(4) states in like terms that, for the privilege to apply, a recorded lis pendens must identify "an action ... which affects" title or possession of real property. In other words, the action must assert a real property claim, which respondents clearly did here.

Moreover, we believe that if the Legislature had intended to erect an evidentiary hurdle or create an exception to the privilege based on lack of evidentiary merit, it would have said so. Since the Legislature did not do so, we are not at liberty to insert what has been omitted. For these reasons, we reject appellants' proposition that the availability of the litigation privilege to a recorded lis pendens depends upon whether the claimant is able to make a certain evidentiary showing of merit to support the real property claim. On this issue, the dicta in *Palmer, supra,* 109 Cal.App.4th 1367, that is relied upon by appellants was in error and we decline to follow it.

In conclusion, we hold that the absolute privilege of Civil Code section 47(b) applied to the recorded lis pendens in this case and, therefore, appellants cannot prevail on their complaint for slander of title as a matter of law. Accordingly, the trial court correctly granted respondents' special motion to strike.

B.    The Forged Deed Was Void

The second reason the trial court's anti-SLAPP ruling was correct is based on the evidence of forgery. Appellants argue that since the Baquirans admitted they may have signed the second deed of trust, it was merely voidable, not void. Respondents contend that since the second deed of trust was materially altered, it was a forgery and therefore void. As we briefly explain, respondents are correct.

17.

"A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing. [Citation.] A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations. [Citation.]" (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378.) "Although the law protects innocent purchasers and encumbrancers, 'that protection extends only to those who obtained good legal title. [Citations.] ... [A] forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor.' [Citations.]" (*Id.* at pp. 379-380.) A forgery includes "'a false making of a writing'" that "'falsely purports to be the writing of another.'" (*Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 41-42, italics omitted.) A deed that has been materially altered after it was signed is a forgery. (*Montgomery v. Bank of America* (1948) 85 Cal.App.2d 559, 563 ["Since the deed was altered without the knowledge, consent or approval of plaintiffs, after it had been signed by them and transmitted to the escrow holder, it was void."]; (*Wutzke v. Bill Reid Painting Service, Inc., supra,* at pp. 43-44 [a forged deed is void].)

Here, respondents have produced uncontradicted evidence to establish that the second deed of trust was materially altered after it was signed. The Baquirans were apparently induced to sign a deed of trust in favor of Allstar Financial Services and Ronna L. Williams, which deed of trust was later altered by Zarrell Williams to create something materially different—a deed of trust in favor of the Mahlums. Existing names and other information were covered over by Williams with masking fluid and the Mahlums' names as beneficiaries were fraudulently inserted to replace what was there before. The second deed of trust was altered by Williams in an attempt to fraudulently support an unrelated loan or debt he had with the Mahlums. The Baquirans never met the Mahlums, never sought a loan from the Mahlums and never borrowed any money from them. In short, the Baquirans never contemplated, never authorized and never signed a

deed of trust in favor of the Mahlums. Respondents contend that this evidence conclusively shows that the second deed of trust in favor of the Mahlums was a forgery. We agree. Since the second deed of trust was materially altered after it was signed, it was a forgery and was therefore void. (*Montgomery v. Bank of America, supra,* 85 Cal.App.2d at p. 563 [materially altered deed was void].)

Since the second deed of trust was a forgery and was void, appellants received no title by it.[7] (*Schiavon v. Arnaudo Brothers, supra,* 84 Cal.App.4th at pp. 379-380.) Accordingly, for this additional reason, appellants failed to establish a probability of prevailing on their claim for slander of title and the special motion to strike was properly granted.

## DISPOSITION

The order granting respondents' special motion to strike is affirmed. Costs on appeal are awarded to respondents.

_____
                                                                Kane, J.

WE CONCUR:


_____
Wiseman, Acting P.J.


_____
Cornell, J.

_____

[7]     Appellants suggest the deed of trust may have been "blank" when signed. The purported evidence on this point was vague, equivocal (as to particular transaction) and hearsay, and for these reasons could not support a judgment in appellants' favor. And even if the evidence on this point were admissible, it would not change the outcome because it does not dispute or contradict the critical fact that the deed was materially altered after it was signed and hence a forgery. Finally, we fail to see how the "blank" deed theory could conceivably support appellants' position, since a blank deed is also void. (See *Trout v. Taylor* (1934) 220 Cal. 652, 656; *Green v. MacAdam* (1959) 175 Cal.App.2d 481, 486.)

19.

# D

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| FRANK LACHAPELLE, | |
| Petitioner, | E058014 |
| v. | (Super.Ct.No. INC1101291) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| HANSEN MCCOY INVESTMENTS, LLC, et al., | |
| Real Parties in Interest. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey L. Gunther, Judge.  (Retired judge of the Sacramento Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition granted.

John C. Torjesen & Associates and John C. Torjesen for Petitioner.

No appearance for Respondent.

Theresa A. Jones for Real Parties in Interest.

1

In this matter we have reviewed the petition and the opposition thereto, which we conclude adequately address the issues raised by the petition. We have determined that resolution of the matter involves the application of settled principles of law, and that issuance of a peremptory writ in the first instance is therefore appropriate. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178.)

In the underlying action, petitioner alleges that the security instrument that was executed and recorded when he refinanced his home is void because it was procured by fraud and forgery. Thus, he asserts the real parties in interest, who were purchasers at a non-judicial foreclosure sale and their successors in interest, did not acquire valid title. He asks in an amended pleading for cancellation of their deeds and for quiet title. Petitioner filed a notice of lis pendens on February 25. 2011.

Real parties moved to expunge the lis pendens on the ground that petitioner cannot establish the probable validity of his claim. They contend that their trustee's deed relates back to the recording of the trust deed in 2008 and petitioner can claim no present interest in the property. They also contend that his claim of fraud can form a basis for a claim for money damages only—and not a claim for title or possession of the property.

The trial court ordered the notice of lis pendens expunged. In its tentative ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." The court recited the facts that the notice of default

here showed that the trust deed foreclosed upon was last modified and recorded on November 5, 2009; petitioner's first lis pendens notice was not recorded until February 15, 2011, and that his second one naming moving parties was not recorded until January 3, 2013. "Thus, the moving defendants' trustees' deed relates back to the date of 11/5/09 trust deed and is effective prior to any notice of lis pendens. As a result, there is no basis for a lis pendens to remain against the property."

The parties presented no additional argument at the hearing and the tentative ruling became the court's ruling. Petitioner seeks review of this ruling pursuant to Code of Civil Code section 405.39. We conclude that the court's stated reasons do not support the order for expungement.

Justification for setting aside a foreclosure sale is that the deed of trust is void. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104-105; see *Stockton v. Newman* (1957) 148 Cal.App.2d 558, 563-564 [trustor sought rescission of promissory note on grounds of fraud].) There, Lona's home was sold at a nonjudicial foreclosure sale. Lona sued the lender, the loan servicer, and others to set aside the trustee's sale, claiming he was a victim of predatory lending in that the loan broker ignored his inability to repay the loan and Lona, lacking fluency in English, did not understand many of the details of the transaction. The court reversed summary judgment for the lenders, concluding that Lona had raised a triable issue that the underlying loan was illegal and unconscionable, thus excusing him from the requirement he tender full payment of the debt to obtain relief.

Plaintiff's notice of lis pendens is not a lien itself, but simply gives notice that plaintiff was challenging the validity of the trust instrument. Here, at least in the Fifth

3

Amended Complaint, petitioner is claiming that the trust deed is void because of fraud in the inducement and forgery. Petitioner's position is much like Lona's—the security instrument was void and he filed suit challenging it. Thereafter, the nonjudicial foreclosure sale took place, which he now seeks to set aside. Indeed, in the same section cited by the trial court (3rd. ed., § 10.208), Miller and Starr also states that in certain cases the purchaser's title following a foreclosure sale is subject to being recovered by the trustor by an attack on the validity of the instrument. Thus, it appears he has stated grounds to set aside the sale based on the invalidity of the trust deed—he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens

Real parties' argument that fraud is simply a monetary claim is not well taken, and we note that petitioner alleges that he acted to rescind the original agreement based on this fraud and forgery. Real parties also argue that the judgment of foreclosure and the eviction have conclusive effect, but in the case relied on, *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, there was a claim that there were irregularities in the foreclosure sale itself. The judgment of foreclosure was conclusive as to the purchaser's title. Here, as discussed above, petitioner is challenging the security instrument as void. Thus, the foreclosure judgment is not conclusive that that instrument was valid.

We offer no opinion whether the trial court may correctly base an order for expungement on other factors showing petitioner cannot establish the probable validity of his claim. We merely conclude that the trial court's ruling was based on a narrow ground

4

regarding the priority of the purchaser's deed, which is not justified based on the face of petitioner's pleadings. Thus, we conclude that the petition must be granted and the trial court directed to reconsider the motion. The trial court is in no way precluded on reconsideration from reaching the same result, i.e., finding that petitioner has not shown the probable validity of his claim under Code of Civil Procedure section 405.32.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Riverside Superior Court to set aside and vacate its order granting the motion to expunge lis pendens and to reconsider the matter in accordance with the views expressed herein.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner is to recover his costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
J.

We concur:

RAMIREZ _____
P. J.

KING _____
J.

5

# E

| | | |
|---|---|---|
| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## ORDER ON MOTION FOR SPECIAL EXCEPTIONS AUTHORIZING ISSUANCE OF WRIT FOR TEMPORARY INJUNCTIVE RELIEF

The Court is of the opinion that it should partially grant Appellant Rowland J. Martin's expedited motion for judgment and writs in light of chain of title evidence contained in the Supplemental Record for the property known as 1216 West Ave. San Antonio Texas, filed on February 18, 2015.

The Court finds in light of the record evidence that Appellant Martin is alleging that he is the owner of a purchase money lien interest that runs with the land relating back to the original sales and purchase transaction between Roy Ramspeck and Moroco Ventures, LLC in 2003; that this transaction is separate and collateral to the transactions between the Law Office of McKnight and Bravenec and Moroco Ventures, LLC in 2005, and that the paramount interest reflected in Appellant's purchase money claim was neither forfeited nor extinguished by the post-petition foreclosure sale that the trustee for McKnight and Bravenec executed on October 3, 2006 during Bankruptcy Case No. 06-15829, and which the 57th Judicial District Court noticed in its order on November 1, 2006.

In view of record evidence of the separate and collateral nature of the property interest Appellants alleges in a third party purchase money lien transaction, the Court finds that it should maintain the status quo relating to Appellant's claimed interests in the real property at 1216 West Ave., in San Antonio, Texas, as this will aid appellate jurisdiction to adjudicate issues relating to the two orders designated as the subject of the appeal.

THEREFORE, IT IS ORDERED that the Court takes judicial notice, and admits into the record, the following pleadings and supporting exhibits: the briefing amendments submitted on January 30, 2014 and February 12, 2015 and filing supplemental appendices by Appellant Rowland J. Martin; and the deposit of Clerk's Supplemental Records.

IT IS FURTHER ORDERED that the Appellant's motion for special exceptions and application for issuance of a writ granting relief from alleged fraud on the court on July 8, 2014 are hereby GRANTED in part, that the gag order and findings issued by the trial court on July 17, 2014 are hereby VACATED nunc pro tunc; and that the extension of time previously granted to Appellees for the filing of a responding brief is STAYED.

IT IS FURTHER ORDERED that in lieu of filing a responding brief, the Appellees and interested parties are hereby instructed to respond to Appellant's interrogatories, and to file a responsive pleading to Appellant's motion for special exceptions and for judgment on the pleadings.

IT FURTHER IS ORDERED that the Court finds that the conditions precedent for an automatic stay from discovery and trial proceedings pursuant to Section 51.-014(b) of the Texas Citizen's Participation Act were satisfied with the entry of an order denying a motion pursuant to Tex. Civ. Parc. & Rem. Code Section 27.003 on July 17, 2014, and the filing of a timely notice of interlocutory appeal from the trial court denying dismissal relief earlier on July 9, 2013.

IT IS FURTHER ORDERED that the Court finds the following: that Appellant has established a prima facie claim for temporary injunction pursuant to Rule 682, and special exceptions pursuant to Rule 91, of the Texas Rules of Civil Procedure; that the claims demonstrate a probability of success on the merits, and that the denial of the requested relief would more likely than not cause injury that cannot be remedied with monetary damages.

IT IS FURTHER ORDERED that Torralba Properties, LLC, and any and all of its joint owners, successors and assigns, are hereby joined in the instant interlocutory appeal proceeding as interested parties.

IT IS FURTHER ORDERED that Appellant Rowland J. Martin is hereby authorized to conduct limited discovery relating to Edward Bravenec, 1216 West Ave., Inc., Torralba Properties, LLC, and One For Autism, Inc. in connection with the filing of his reply brief or until March 31, 2015, which ever is later.

IT IS FURTHER ORDERED that during the discovery period the appellees and interest parties are enjoined from executing transfers or recoding deed records affecting any change in ownership, control or possession of the West Ave. property until the conclusion of proceedings.


Date: February 24, 2015

_____
Presiding Judge

29

# F

| | | |
|---|---|---|
| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## PROPOSED INTERROGATORIES TO ATTORNEY GLENN DEADMAN INVOKING FRAUD EXCEPTIONS TO THE ATTORNEY CLIENT PRIVILEGE

To Attorney Glenn Deadman:

Please answer these interrogatories ("questions") to the best of your personal knowledge. These questions have the force and effect of being continuous and ongoing in nature. Any occurence that changes a previously given answer must be corrected and forwarded to the undersigned Appellant r within a reasonable time. Due to your dual role as attorney and witness for Appellees, and the commission of an apparent fraud on the court, there is no unqualified attorney client privilege available to you under the fraud exception to the attorney client privilege. However, there is no objection to invocation of the Fifth Amendment privilege against self-incrimination.

1. Is your position that there was not any exchange between you and Rowland Martin on or about December 1, 2014 concerning the deed recorded on July 8, 2014?

2. Is it your position that a telephone exchange took place in December, and that your neglect to inform the Court about the change of position is excused on some previously unstated basis? If so, what basis is that?

3. Is it the fault of your client Edward Bravenec that the Court and the undersigned were misinformed about the true state of affairs concerning the deed recorded on July 8, 2014?

4. Is it your position that it is Rowland Martin's fault that the Court was misinformed about the true state of affairs concerning the deed recorded on July 8, 2014?

5. Do you admit that you failed to conduct adequate pre-filing inquiries to ascertain whether your client was telling the truth or not?

6. Was it ever your intention to inform the Court about the true state of affairs?

7. Is it your practice to wait until known adverse information is disclosed by others before you decide to make the disclosure yourself?

8. What was the outcome of the misconduct proceeding in which you were the respondent of a petition filed by the Commission for Lawyer Discipline alleging that you engaged in acts of deceit?

9. Did Bravenec know about your background as the respondent of a state bar misconduct proceeding ?

10. Was the fact that you were the respondent of a state bar misconduct proceeding a factor in his decision to select you?

11. Did you discuss the situation with your client?

12. What explanation for the omission did your client give?

13. Is it true that Torralba Properties, LLC was the recipient of a deed transfer on July 8, 2014, as averred in the deed record filed with the County Clerk?

14. Is it true that Edward Bravenec gave truthful testimony on July 9, 2014, and the deed record filed the preceding day in his name was a forgery?

15 What payment arrangements were made for your services? Or you a party to a contingency fee arrangement, or does Bravenec pay you in cash?

16. Will you receive compensation from the proceeds of any escrow accounts of which your client Edward Bravenec is the beneficiary?

17. Can you deny any of the facts suggesting that Edward Bravenec committed fraud on the court occurred on July 9, 2014, and do you have sufficient information about the event to form an opinion in response to the question?

18 Can you deny any of the facts suggesting that Edward Bravenec filed a deed record on July 8, 2014 that was inconsistent with his testimony on July 9, 2014, and do you have sufficient information about the event to form an opinion in response to the question?

19. Have you or Edward Bravenec engaged in reckless disregard for the truth at any other time in the proceedings in Case No. 2014-CI-07644?

20. Do you recall stating to Judge Dick Alcala that Defendant Rowland Martin acquired a subpoena duces tecum to compel witness testimony for the contempt hearing on or about July 1, 2014 through improper means and without the express consent and authorization of the Bexar County District Clerk's Office, and if so, is that still your testimony?

21. Is it your position that por se litigants are barred from using subpoenas to compel witness testimony? If not, please explain how the subpoena you objected to on or about July 1,

31

2014 failed to conform to the legal requirements applicable to subpoenas prepared by the Bexar County District Clerk's Office.

22. How much money did 1216 West Ave., Inc. make from its possession and control of the West Ave. property?

23 Did the net profits exceed the face value of the loan executed in May of 2005?

24. How much of the surplus value of the transaction did McKnight and Bravenec disburse to Appellant Rowland Martin?

25. Identify the title insurance company and escrow agents for the transfer in July 2014.